GIANT FOOD INC., Appellant,

v.

MALONE & HYDE, INC., Appellee,

C. Marshall Dann, Commissioner of Patents and Trademarks, joined by order of the Court.

Patent Appeal No. 74–557.

United States Court of Customs and Patent Appeals.

Oct. 9, 1975.

As Amended Oct. 23, 1975.

Browne, Beveridge, DeGrandi & Kline, Washington, D. C., attys. of record, for appellant; Richard G. Kline, Francis C. Browne, Edward T. Colbert, Washington, D. C., of counsel.

James H. Littlepage, Littlepage, Quaintance, Murphy & Dobyns, Washington, D. C., attys. of record, for appellee.

Before MARKEY, Chief Judge, RICH, LANE and MILLER, Judges, and AL-MOND, Senior Judge.

ALMOND, Senior Judge.

This appeal is by the prevailing party in a trademark interference from that part of a decision by the Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (TTAB), 178 USPQ 246 (1973), which, after deciding priority in favor of appellant, refused registration to appellant as well as to appellee. We reverse.

On February 19, 1969, appellant, Giant Food Inc., filed a normal, territorially unrestricted application, serial No. 319,-538, to register the wordmark GIANT FOOD on the principal register (15 U.S.C. §§ 1051, 1053) as a service mark for "RETAIL GROCERY SUPERMARKET AND GENERAL MERCHANDISING STORE SERVICES." Use of the mark since February 5, 1936 is alleged. This application was placed in interference on October 15, 1969, with an application of Malone & Hyde, Inc., appellee,

doing business as Giant Foods of America, to register a mark for grocery store services which includes the words "GIANT FOODS OF AMERICA" displayed in small letters in association with a design.[1] Appellee's application serial No. 293,730 was filed on March 20, 1968, and use of the mark since September 13, 1966 is alleged.

Appellee had also filed another application on March 13, 1968, serial No. 293,-157, to register a mark consisting of a different design in association with the same words as a trademark for a number of food products, asserting use since November 16, 1966.[2] Appellant opposed registration of the mark, opposition No. 49,377, and on November 19, 1969 the interference and opposition were consolidated and moved to final hearing on the same record and briefs.

*Appellee's Position and TTAB Decisions*

Appellee's position is that GIANT and GIANT FOOD have been shown by the evidence appellee produced in the consolidated proceedings to be so widely used throughout the United States as, or in, the names of stores or supermarkets that they are not subject to exclusive appropriation as trade names or trademarks by appellant, wherefore registration to appellant was properly denied.

Appellee's evidence shows that at the time of its investigation in October and November 1971, there were some 22 "GIANT FOOD" supermarkets in 16 different cities and 59 other users of "GIANT" alone or with a prefix or suffix in food merchandising in 15 other cities. These are all unconnected with appellant or appellee.

Appellee further notes certain litigation in which appellant was involved with one such user of "Giant" in the Norfolk, Va. area. *Rosso and Mastracco, Inc. v. Giant Food Shopping Center of Virginia, Inc.*, 200 Va. 159, 104 S.E.2d 776 (1958). More than a decade prior to appellant's filing date, when it added a

---

1. See Fig. "A" in the TTAB opinion for an illustration of the mark. 178 USPQ at 246.

2. See TTAB opinion Fig. "B" for this mark. 178 USPQ at 247.

new market to its chain in Virginia, it was sued by a corporation which had been doing business under the name GIANT OPEN AIR MARKET since 1948. Plaintiff sought an injunction against appellant's use of GIANT in and around Norfolk. Appellant filed a cross-bill seeking to restrain the plaintiff from using GIANT. The bill and cross-bill were dismissed by the trial court on the grounds that GIANT had not acquired a secondary meaning and that use of the two names GIANT OPEN AIR MARKET and GIANT FOOD were not likely to cause confusion. The appellate court affirmed, holding, inter alia, that:

> The word "Giant," as found in the full name of each of the parties, is an adjective. In common and ordinary acceptance, it is descriptive of tremendous, or extraordinary, size. It is applicable to the size of the stores and the extent of their business operations. It bears no relation to the peculiar type or character of merchandise which the parties here offered for sale.

Appellee's evidence shows that six GIANT OPEN AIR MARKETS were in operation in 1971 in Norfolk, Portsmouth, Richmond, and Virginia Beach, Virginia, showing use of that name since 1948. All of this evidence, which formed the basis of the TTAB's decision to refuse a registration to appellant, is summarized in the board's opinion as follows (footnote omitted):

> Defendant's [appellee's] record is directed entirely in support of its pleading in the answer [in the opposition] that the term "GIANT" has been so widely used in connection with grocery stores that it is, in effect, not capable of being exclusively appropriated by any one person in the field. In this regard, the affidavit offered by defendant, the affiant [Mable G. Littlepage] is the wife of defendant's counsel, reveals that she visited various cities in New York, Pennsylvania, Virginia,

Tennessee, Alabama, Louisiana, Texas, and California where she found a large number of supermarket stores utilizing the term "GIANT" alone and in association with other wording as the name for their establishments and, in many cases, as private brand labels for some of the goods sold therein. Illustrative of these terms are "GIANT MEATS", "GIANT–MIDSTATE", "GIANT MARKETS", "GIANT OPEN AIR MARKET", "TINEE GIANT", "GIANT FOOD", "GIANT FOOD MARKETS", "FOOD GIANT", and "SCHWEGMANN BROS. GIANT SUPER MARKETS." The affidavit is accompanied by pictures of these establishments which she took during the course of her trip and wrappers, labels, and packaging material from various products which she purchased in these stores. In addition, defendant has made of record under the applicable rule copies of pages from twenty telephone directories which are intended to corroborate the existence of the stores referred to in the affidavit and to further show that listings of stores, and particularly supermarkets, bearing the name "GIANT", either alone or in conjunction with some other word or words, may be found in the telephone directories of such other cities as Wichita, Kansas, St. Louis, Missouri, Mt. Pleasant, Michigan, and Boston, Massachusetts.

The TTAB, speaking primarily of the issue in the opposition, concluded that GIANT and GIANT FOOD possess a strong trademark or service-mark significance in appellant's area of doing business,[3] indicating appellant's goods and services, and, notwithstanding extensive use of GIANT by others located elsewhere, that there would be likelihood of confusion from the use of appellee's mark including the words GIANT FOODS OF AMERICA in that area. Citing the prima facie evidentiary effect which an unrestricted registration to ap-

---

**3.** The TTAB found appellant's area of business to include the District of Columbia and certain adjacent areas of Maryland and Virginia. The record shows that in that area appellant had some 93 stores in 1970 and operated other facilities serving them such as warehouses, a large fleet of trailer trucks, and a bakery.

pellee would have under § 7(b) of the statute (15 U.S.C. § 1057(b)), the TTAB therefore sustained the opposition and held that appellee was not entitled to register its product trademark involved therein, at least on its then pending unrestricted application.

The TTAB opinion then proceeded to a consideration of the interference involving the two service marks of the parties. Its legal analysis of why neither mark should be registered is as follows (footnote omitted; matter in brackets added):

Turning to the interference proceeding, inasmuch as defendant's [appellee's] mark * * * bears the words "GIANT FOODS OF AMERICA", what has been said in regard to defendant's mark involved in the opposition likewise pertains thereto, and in view of plaintiff's [appellant's] established prior rights, as between the parties, in "GIANT" and "GIANT FOOD", defendant is not entitled to a registration of this mark.

In view of this holding, it appears that this interference need proceed no further and that judgment should forthwith be rendered in favor of plaintiff.[4] However, Section 17 of the statute [15 USC 1067] provides that:

"In every case of interference, opposition to registration, application to register as a lawful concurrent user, or application to cancel the registration of a mark, the Commissioner shall give notice to all parties and shall direct a Trademark Trial and Appeal Board to determine and decide the respective rights of registration. . . ."

Apropos thereto, Trademark Rule 2.96 [37 CFR 2.96] provides that "The issue in an interference between applications shall be the respective rights of the parties to registration." And Sec-

tion 18 [15 USC 1068] provides, inter alia, that in an interference proceeding, the Office may refuse to register any or all of several marks, or may register the mark or marks for the person or persons entitled thereto, as the rights of the parties hereunder may be established in the proceeding. Thus, in any given interference, the Board has various alternatives as spelled out in *Tudor Square Sportsware [Sportswear], Inc. v. The Pop-Op Corporation,* 160 USPQ 50 (TT&A Bd., 1968), including that of refusing registration to both parties on the basis of evidence adduced in the proceeding which shows that neither party possesses rights in the contested designation sufficient to support a territory [sic] unrestricted registration.

In this regard, plaintiff [appellant], like defendant [appellee], is seeking an unrestricted registration of "GIANT FOOD". The issuance of the registration [by virtue of § 7(b)] would be prima facie evidence of the plaintiff's exclusive right to the use of "GIANT FOOD" for retail grocery store services and general merchandise store services on a nationwide basis. However, in view of the evidence adduced by defendant to the effect that third persons are making use of "GIANT" as the name or as a part of a name for retail grocery stores in a large number of states throughout the country, and considering that plaintiff has acknowledged use of "FOOD GIANT" by a stranger to this proceeding in California, plaintiff cannot properly claim a right to the use of the mark "GIANT FOOD" that could embrace all of commerce;[5] and manifestly the issuance of an unrestricted registration to plaintiff would not, in any way, truly reflect the rights of plaintiff and others to the use of "GIANT" or "GIANT

---

4. We take this sentence to mean this: In view of appellant's priority and the likelihood of confusion resulting from concurrent use of the marks on identical services, the issue of priority in the interference is disposed of. (What follows indicates that disposing of the priority issue is not the end of the matter.)

5. We interpret the expression "all of commerce" to mean the services named in appellant's application *throughout the entire United States,* having in mind the definition of "Commerce" in 15 U.S.C. § 1127 [§ 45].

FOOD" for grocery store services as they presently exist in this country. Thus, plaintiff is not entitled to the registration for which it has made application.

The board sustained appellant's opposition and no appeal was taken by appellee from that portion of the decision. Appellee also took no appeal from the portion of the TTAB decision pertaining to the interference awarding priority to appellant.[6] However, as appellee, it has filed a brief and orally argued in this court that the Commissioner was justified in refusing (through the TTAB) to register appellant's mark, that priority is not the only issue in a trademark interference, and that winning the interference does not automatically entitle the winner to registration.

### Appellant's Position

Although the TTAB held against appellee in the interference, appellee supports the TTAB action, as we have indicated above, in denying registration to appellant, the propriety of which is the only issue before us. Appellee notes both parties' agreement concerning the Commissioner's statutory authority to refuse appellant a registration. Appellant's position is expressed in its brief, together with its principal argument as to why the board erred, as follows:

> Appellant does not quarrel with the statutory authority under which the Commissioner is empowered to act, merely that this is not a situation where such authority is either applicable or appropriate. *Adequate procedures are available to protect the rights of others* if they can be lawfully substantiated, either in a concurrent use proceeding, by cancellation, or as a legal defense, should Appellant attempt to enforce its rights against other parties that may or may not possess a lawful concurrent right to use a con-

flicting mark. Except to the extent as any conflicting legitimate rights may require, which have not been established by Malone & Hyde, registrations of the prior prevailing party should not be territorially restricted. [Emphasis ours.]

Appellant's first point in arguing that the TTAB *should not* have exercised its authority in this case is that third-party uses cannot be considered in this interference because the issue was not enlarged beyond consideration of mere priority by either a notice under 37 CFR 2.97 to enlarge the issue or under 37 CFR 2.94(a)(1) or (3) to dissolve on the grounds that there is no interference in fact or that the mark is not registrable to one of the parties.

Appellant's next point is, in effect, that because it has established "superior rights to an interfering mark," i. e., to appellee's mark, it "is entitled to a registration not limited to the actual area of use," citing *Aeronautical Electronics Inc. v. Aerotron Radio Co.,* 120 USPQ 488 (Com'r.Pat.1959), and *In re Beatrice Foods Co.,* 429 F.2d 466, 57 CCPA 1302 (1970). Had appellant known what we were going to decide in *Hollowform, Inc. v. Aeh,* 515 F.2d 1174, CCPA, decided May 22, 1975, it would probably have cited it, too.

Finally, appellant argues that the evidence is not sufficient to support the action of the TTAB. It makes a number of other arguments based on its success in defeating appellee in the opposition and in the interference and on appellee's non-innocent adoption of its marks, but these are all irrelevant to its contention that the TTAB erred in denying registration to appellant.

### The Commissioner's Position

The petition of appeal was filed in this court November 30, 1973. On March 1, 1974, Giant Food Inc. filed a motion "to

---

**6.** Beyond the time allowed for an appeal, apparently because of a misunderstanding with appellant's attorney, appellee petitioned the Commissioner to permit the late filing of an appeal, requesting a waiver of Rule 2.145(d) and arguing that it might not be permitted to participate in the appeal taken by Giant Food Inc. because that appeal "is ex parte in nature." The petition was denied.

substitute the Commissioner of Patents as the proper Appellee and to dismiss Malone & Hyde, Inc. as an improper party without standing in an *ex parte* appeal taken by Appellant as the prevailing party challenging certain conditions imposed on the registrability of Appellant's mark GIANT FOOD." (The TTAB opinion shows on its face that it imposed no conditions but simply refused registration.) At the same time appellant moved "to strike from the record such matters as are improperly before the Court by reason of the improvidently granted Praecipe for Transmission of the Record submitted by Malone & Hyde * * * ." (This was a follow-up on appellant's unsuccessful attempt to have the Commissioner refuse to transmit to this court appellee's evidence in the consolidated proceeding. The Acting Commissioner denied appellant's petition on October 4, 1973, on the two grounds (1) that the praecipe specified the evidence the court would need to adjudicate the sole question before it and (2) that he had no discretion under the statute to refuse to honor the praecipe.) We denied both of appellant's motions on April 1, 1974.

On February 18, 1975, by leave of court granted at oral argument on February 11, appellant made a new motion to *join* the Commissioner as a party to the appeal "on the ground that, in the absence of the Commissioner, complete and effective relief cannot be accorded to Appellant," stating a number of points in support. The Commissioner filed a response stating that he had no objection to being joined as a party. We then, on March 11, 1975, ordered that the Commissioner be joined as a party and file a brief stating his views on the decision of the TTAB and answering the points filed by appellant in support of its motions. This brief was filed by the Solicitor on behalf of the Commissioner.

### (a) *On Being a Party*

Shifting from his initial position of not objecting to being a party, the brief for the Commissioner takes the position that he is not a proper party. The reasoning is that the board's decision is inter partes in nature, that appellee is the proper party to respond to the appellant's arguments, that appellant's right to register, as well as appellee's, was a proper issue in the interference, and that appellant had actual notice that appellee was challenging its right to register on the basis of use by third parties. The brief for the Commissioner invites this court to "reconsider the advisability or necessity of joining the Commissioner as a party to this appeal (and its authority for doing so) in the interest of lawful and orderly procedure, and to avoid establishing a perhaps unfortunate and unwise precedent."

Having done so, we conclude that the Commissioner was properly *joined* as a party to this proceeding.[7] As we pointed out above, the sole portion of the board's decision appealed from is that refusing registration to appellant. This decision was not based on an adverse finding with regard to appellant vis-a-vis appellee on what is normally regarded as the central issue in a trademark interference, namely, priority of use. The board found in fact that *appellee* was not entitled to a registration "in view of plaintiff's [appellant's] established prior rights, *as between the parties* * * * ." (Emphasis added.) Appellant was denied a registration based, in large part, upon the alleged conflicting interests of strangers to the proceedings, and the board's decision is in fact, if not in name, an "ex parte" decision.

---

7. As observed in Appellee's Response to Appellant's Motion to Substitute Commissioner of Patents As Proper Party, served March 12, 1974:

Perhaps the interests of Malone & Hyde, Inc. and those of the public could best be served by permitting the Solicitor of the Patent Office to present his case in behalf of the public, while permitting Malone & Hyde, Inc. to be heard in its own behalf.

Furthermore, keeping in mind that the board's refusal to register appellant's mark was based primarily on the alleged "rights" of third parties or strangers to the proceedings, there must be some assurances that the evidentiary significance of those rights will be adequately brought forth in this proceeding. Although appellee's own self-interest, given the particular facts of this case, is no doubt consistent with the vigorous presentation of this evidence upon which the board's decision rests, the solicitor is in the best position to argue this issue on the Commissioner's behalf.

Appellee was also properly present as a party to the proceeding. The board's action in refusing appellant registration, though ex parte in substance, was in response to issues raised by appellee, and was based on evidence adduced by appellee in the inter partes proceeding before the TTAB.

(b) *On the Merits of Refusal to Register*

The Commissioner supports the action of the TTAB in refusing registration to appellant of GIANT FOOD. The brief on his behalf summarizes his view of appellant's principal argument as follows:

Appellant argues * * * that the evidence of use of marks or trade names by "others" fails to meet the statutory requirements of 15 USC 1052(d) because it has not been shown that such marks or trade names were "previously used" or that any "concurrent lawful use" commenced prior to the filing of its application. Appellant's position appears to be that the evidence of record is insufficient to support a finding that any of the entities whose uses are established in the record may lawfully file an application for concurrent use registration, and that the record evidence is therefore inadequate to deny it a territorially unrestricted registration of "Giant Food" which would be entitled to the benefits of 15 USC 1057(b) [§ 7(b)].

The solicitor's view of this line of argument is that it "misses the mark." He says (footnote omitted):

Priority of use is not necessarily controlling in factual situations of the present nature. *United Drug Co. v. Rectanus Co.,* 248 U.S. 90, 100–101, [39 S.Ct. 48, 63 L.Ed. 141] (1918); *Hanover Milling Co. v. Metcalf,* 240 U.S. 403, 415 [36 S.Ct. 357, 60 L.Ed. 713] (1916). It may safely be conceded that there is no evidence that anyone has "previously used", i. e., at a time prior to appellant's first use, a trade name or mark which is likely to cause confusion with appellant's "Giant Food" mark for its activities [i. e., its services].

We read this as saying that it is unimportant that the evidence does not bring the third-party uses within the "previously used" provision of § 2(d), upon which appellant heavily relies. The solicitor concludes his comment on the merits as follows (footnotes and record references omitted):

Despite its knowledge of various of the third party uses, appellant has been unwilling—or unable—to enjoin these uses, no doubt because of its own localized use and advertising of its rather mundane mark. Clearly the Board was correct in concluding that, predicated on the evidence before it, granting of a territorially unrestricted registration to appellant, with the attendant benefits conferred by 15 USC 1057(b) [§ 7(b)], would not truly reflect the rights of appellant and others *to the use* of "Giant" or "Giant Food" for grocery store services as they presently exist in this country.

OPINION

■ Appellant's preliminary contention in this appeal is that the TTAB should not have considered third-party uses in this interference because the is-

sue was not enlarged by a notice under Rule 2.97 or presented by a motion to dissolve under Rule 2.94(a).[8] It is our view that the question raised by this argument is essentially one of the adequacy of pleading and that the pleadings were sufficient to allow presentation of the evidence of the third-party uses without surprise to appellant if, indeed, the question of sufficiency was not waived by appellant. Appellant itself moved to consolidate the interference with its opposition. In the opposition, appellee's answer, which was on file even before the institution of the interference, asserted as an affirmative defense, as quoted in the TTAB opinion, that

> the words "GIANT" or "GIANT FOODS" have been so widely used throughout the United States by concerns other than Opposer [appellant] as a trade name for grocery stores selling the goods listed in the Application, and as a trade mark for said goods, that said words are not subject to exclusive appropriation as a trade name or trade mark by Opposer * *.

All of appellee's evidence came in under that defensive pleading. At the opening of the taking of the testimony of appellant's vice president, its attorney, Mr. Kline, said, "I would like to request that testimony taken may be introduced and used in both proceedings, namely, Opposition 49,377 and Interference 6,721." Mr. Littlepage, appellee's counsel, so stipulated. At the close of the testimony during cross-examination of this witness by Mr. Littlepage, after the witness had just shown considerable knowledge of the "Food Giant" operation in Los Angeles and "Giant Food Stores" in Pennsylvania, Mr. Kline raised an objection that third-party uses were irrelevant to the issue of priority in an interference. He instructed his witness that he need not answer further questions about them, and the witness declined to answer further. The taking of testimony then concluded as follows (emphasis ours):

> MR. LITTLEPAGE: I move to strike the deposition.
>
> MR. KLINE: May I comment one thing for the record.
>
> *If you choose to rely on third party uses, you may do so* in taking examination to the record *but not through this witness.* That is the proper procedure.

That was in September 1970. During October and November 1971 Mrs. Littlepage collected her evidence and in December the attorneys stipulated its introduction in affidavit form under Rule 2.123(b). Under all these circumstances, appellant was fully apprised of what to expect.[9]

■ We agree with the conclusion of the TTAB, furthermore, that trademark interferences are not limited to the issue of priority of use. As stated in the board's opinion, above quoted, the rules and the statute are consistent with this view. This was true even before the Trademark Act of 1946. *Coschocton Glove Co. v. Buckeye Glove Co.,* 90 F.2d 660, 24 CCPA 1338 (1937). In that case, this court pointed to the fact that section 7 of the Act of February 20, 1905,

---

8. Trademark Rule 2.97 provides in pertinent part:

> Enlargement of Issue. Any party to an interference may, within fifty days after the notice of interference is mailed, file a pleading setting forth affirmatively *any matter* on the basis of which, if proved, the other party would not be entitled to obtain or maintain a registration. [Emphasis supplied.]

Alternatively, either party may move to dissolve the interference under Trademark Rule 2.94(a)(1) or (3), either on the ground that no interference in fact exists or that the mark is not registrable.

9. It is not at all clear to us, in view of the express statement in Rule 2.96 that "The issue in an interference shall be the respective rights of the parties to registration," and of the way that language has been interpreted administratively, that Rule 2.97, relating to enlargement of the issue, requires enlargement to produce evidence affecting the right of either party to a registration when the interference is between pending applications. The express prohibition in the second sentence of Rule 2.97 goes only to requests to cancel existing *registrations.*

which there applied, provided that in interferences the examiner in charge of interferences was "to determine the question of the right of registration" and that the "commissioner may refuse to register * * * both of two interfering marks," clearly the antecedents of the corresponding present provisions of § 17 and § 18.

■ Having thus disposed of these preliminary contentions, we turn now to the determination of whether appellant was rightfully refused a registration notwithstanding its uncontroverted prior rights as between the parties. The board predicated its determination to this effect in large part upon evidence adduced by appellee, in the form of an affidavit, of third-party use of the term "GIANT" as the name, or as part of the name, for retail grocery stores in a large number of states throughout the country. This evidence is, in our view, insufficient to support the board's position.

Appellee's evidence of third-party use fails to allege or establish that such use predates the commencement of use by appellant of its mark. Inherent in the board's position that such use is sufficient for the denial of a territorially unrestricted registration to the senior user is the same deficiency as that presented by the opposer-appellant's arguments in our recent *Hollowform* decision. *Hollowform* was a trademark opposition proceeding which was predicated on opposer's claim that it was the owner of the trademark TOP KAT for truck campers in twelve western states in which it used the mark before the applicant, doing business in Florida, had used her trademark in opposer's territory. We found, citing several prior decisions, that because the pleaded dates of the single opposer's uses were all subsequent to the applicant's filing date (and a fortiori subsequent to applicant's date of first use), opposer "could not be damaged as that term has been construed, by the

issuance of a registration to appellee." Much the same rationale is applicable here.

■■ The fact that third-party rights are alleged, as distinguished from the rights of appellant in *Hollowform,* is not material to appellant's right to registration. In the absence of a showing that there is a *prior* third-party use, any common-law rights resulting from an innocent subsequent use are not superior to appellant's rights except in the particular state or states in which such subsequent use preceded appellant's use in such state or states.[10] Such common-law rights cannot be used as a basis for the denial of a nationwide registration to appellant except by way of a concurrent use proceeding. It has furthermore not been shown to our satisfaction that such third-party uses are *now,* or that they were at the time of appellant's February 1969 filing date, so extensive as to cast doubt on the trademark significance of appellant's mark. Appellant has made a sufficient showing that its mark is capable of distinguishing its services from the services of others in its market area. That market, embracing two states and the District of Columbia, is "in commerce." So far as the record reveals, appellant was the first to use the mark in commerce. No more is required by the statute.

The evidence of third-party use submitted by appellee is also insufficient to support the board's position, because it fails to establish what common-law rights, if any, have accrued to third parties based upon their use of the term "GIANT" either alone or in combination with other terms. Use is not enough to establish common-law rights in a mark, and the record is devoid of any indication of, for instance, the circumstances under which the third-party marks were adopted.

Third parties to these proceedings *may have,* in their specific areas of use, rights

10. Section 2(d) of the Lanham Act provides, in pertinent part, that registration shall be granted unless the mark sought to be registered is confusingly similar to "a mark registered in the Patent Office or a mark or trade name *previously used* in the United States by another * * *." (Emphasis added.) 15 U.S.C. § 1052(d).

superior to those of appellant in those areas. Alternatively, they may have no rights at all, as would be the case if they had adopted their marks with knowledge of appellant's use in commerce. See *Southland Corp. v. Schubert,* 297 F.Supp. 477 (D.C.Cal.1968). We are not intentionally ignoring nationwide commercial reality. The only way we could take cognizance of it would be by means of proper evidence in the record. Whatever may be the rights of third-party strangers to this proceeding, there simply has been no proof, by the submission of evidence, of the existence of the nature and extent of those rights, and appellant has had no opportunity to rebut or refute any such showing that might have been made. Obviously this is not to say that such a showing could not have been made, or that it might not be made in the future in an appropriate proceeding involving strangers to this proceeding. Even if no formal legal proceedings are instituted, furthermore, such common-law rights as strangers to this proceeding might possess will not be extinguished by our decision today. Nor will our decision affect the rights, if any, of third parties to limit appellant's registration by means of the statutorily provided concurrent use proceedings instituted under § 2(d) of the Lanham Act, 15 U.S.C. § 1052(d).

We cannot conceive that appellant, armed with its newly acquired registration, and the favorable presumptions appurtenant thereto by virtue of § 7(b), will flail about the nation suing innocent subsequent users in their respective areas of use. Any such supposition would be based on unsupported and unsupportable conjectures: (1) that appellant would be motivated in the first instance to initiate such assuredly fruitless gestures; (2) that a court of competent jurisdiction would fail to apply the law protecting the freedom of continued use by innocent adopters of marks within

their areas; and (3) that a court would be unwilling or unable to grant appropriate relief for the harassment envisaged by such a course of conduct.

■ One of the primary purposes of registration on the principal register under the Lanham Act is to establish a system of constructive notice whereby a first user of a mark may be enabled to pre-empt by registration all of the remaining virgin territory not yet occupied by subsequent users of the same or similar marks, although such area of first use may be in but a few states.[11] To restrict such first user to the two or three states in which such first use occurred would leave the remaining virgin territory open to wrongful exploitation by a subsequent user and would defeat one of the single most important purposes of the Act. The TTAB recognized this important purpose in *Tie Rack Enterprises, Inc. v. Tie Rack Stores,* 168 USPQ 441 (TT&AB 1970), where it described the consequences of the issuance of a registration restricted to the areas of actual use as "The Great American Land Rush":

> That is, this would undoubtedly encourage a subsequent user, with knowledge of a prior user, to hasten in anticipation of or during litigation to make a single shipment to various areas of the United States to establish its "rights" at trial and to effectively place a "wall" around the prior user thereby forestalling that party's right to expand the use of its mark within some reasonable future time. This likewise would be contrary to the intent of the Lanham Act to recognize and protect only the established rights of a subsequent user prior to notice, actual or constructive. [168 USPQ at 447.]

In the present case, for example, assuming that each of the uses cited by appellee occurred innocently in their par-

---

11. The record shows that appellant was the first user of the mark in commerce regulated by Congress, as well as the first user in *intrastate commerce.* We therefore express no opinion on whether appellant would prevail if it had been the first user in intrastate commerce but a subsequent user in interstate commerce.

ticular areas prior to the entry into those areas of appellant, there would remain a virgin territory, so far as this record shows, of more than 30 states. The winner of the race for that territory, according to our system of federal registration, is the senior user at least in those instances where he is also the first to apply for a federal registration. See *In re Beatrice Food Co., (In re Fairway Foods, Inc.),* 429 F.2d 466, 57 CCPA 1302 (1970).

Accordingly, the decision of the Trademark Trial and Appeal Board is *reversed.*

*Reversed.*

MILLER, Judge (concurring).

I agree with the decision of the majority on the basis of the following statements in its opinion:

> The evidence of third-party use submitted by appellee is . . . insufficient to support the board's position, because it fails to establish what common-law rights, if any, have accrued to third parties based upon their use of the term "GIANT" either alone or in combination with other terms. Use is not enough to establish common-law rights in a mark, and the record is devoid of any indication of, for instance, the circumstances under which the third-party marks were adopted.

Essentially, this is an ex parte proceeding. Third party rights can be established in subsequent inter partes proceedings as a result of which "commercial realities" can be recognized by issuing appellant a registration which will, at least,' encompass its present areas of use and the "virgin territory"· of more than thirty states.

However, I cannot join the majority opinion because of its needless reliance on this court's majority opinion in *Hollowform, Inc. v. Aeh,* 515 F.2d 1174, (CCPA 1975).

I cannot join the dissenting opinion of my brother Rich for several reasons. I disagree with the statement 'that the issue in *Hollowform* was simply opposer's standing to oppose. As noted in his opinion for the majority in that case, the board said:

> The present proceeding . . . is directed solely to applicant's right to a geographically unrestricted registration.

And this is how the majority opinion put it:

> The only question before us is whether opposer's allegations, if true, would establish that applicant is *not* entitled to the [geographically unrestricted] registration.

The majority opinion then went on to say:

> whatever common law rights opposer may have in its states of use are completely irrelevant here and . . . the fact that a subsequent user adopts. a mark in good faith in a territory where the prior user's mark has not been known or used will not preclude [geographically unrestricted] registration of the prior user's mark.

Now, however, Judge Rich's dissenting opinion says it "makes no difference" whether uses by others of GIANT and GIANT FOOD were prior to or subsequent to appellant's use, because, in view of the evidence:

> it simply cannot be said that GIANT FOOD is a trademark or service mark "by which the services of the applicant may be distinguished from the services of others" *throughout the United States.*

That evidence, as the majority opinion points out, "fails to establish what common law rights, if any, have accrued to third parties.[1] However, this deficiency

---

1. The evidence consists of the Littlepage affidavit showing use of GIANT or GIANT FOOD in 8 states and telephone directory listings showing such use in 4 additional states—a total of 12 states (31 cities)—the same number of states in which opposer in *Hollowform* had used its mark. Judge Rich says that such evidence makes "a strong prima facie case for denying a nationwide registration." However, in *Hollowform,* opposer's allegations having been taken as true for purposes of applicant's motion to dismiss, there was also a prima fa-

is brushed aside by saying there is no reason to produce evidence beyond what is necessary to establish a "lack of distinctiveness, nationwide."

I agree with Judge Rich that "[i]t is simply not the law that concurrent use proceedings are the only means by which nationwide registration can be denied appellant." As I said in my dissenting opinion in *Hollowform*:

> If an opposer shows facts which refute an applicant's claim that applicant is *the* owner of a trademark and that no one else has the right to use the mark in commerce, the Commissioner has clear authority to deny the application for an unrestricted registration. . . . As this court has pointed out, "the Act does intend . . . that registration and use be coincident so far as possible." *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 1364, (CCPA 1973).

However, the majority opinion in *Hollowform* quoted, without disapproval, the board's statement that opposer's only remedy was by a concurrent use proceeding and said:

> Opposer is not here asking that applicant's registration be territorially limited but that it be *denied.*

Although I strongly disagree, at least the majority opinion here is consistent with the majority opinion in *Hollowform* when it says:

> Such common-law rights cannot be used as a basis for the denial of a nationwide registration to appellant except by way of a concurrent use proceeding.

> In my view, those common law rights could be established by evidence of first and continued use by others in good faith in states not occupied by appellant, in which event appellant can and should be denied a nationwide registration.

RICH, Judge (dissenting).

I fully agree with the well-written opinion of the majority in its statement of the facts and disposition of preliminary questions up to the point where it turns "to the determination of whether appellant was rightfully refused registration." I am convinced that appellant was rightfully refused registration on its unrestricted application. Our decision in *Hollowform, Inc. v. Aeh,* 515 F.2d 1174 (CCPA 1975), on which the majority so heavily rests its case, was based on entirely different facts and involved a different issue and therefore is not controlling here. In appraising the evidence, the majority preoccupies itself with considering the wrong questions instead of the one question before us.

Appellee's position, unanimously adopted by the TTAB and now, in this court for the first time, supported by the Solicitor in his brief submitted at our request, is that the evidence shows that the mark sought to be registered, GIANT FOOD, is so widely used throughout the United States for the identical services named in appellant's application as not to be subject to exclusive appropriation by appellant, for which reason it is unregistrable to appellant on a nationwide basis. What rights appellant may have to register for the territory actually occupied by it, or which in the future it may occupy, is not a question which is before us.

The majority opinion concerns itself unduly with proof of the rights of others—strangers to this proceeding—but that is not what we have to decide. We are concerned only with *appellant's* right to unrestricted registration—and as of *now,* not in 1936, nearly forty years ago. The situation has changed since then. This is no longer an interference in which the issue is priority of use. As the majority has accurately stated, "the board's decision is in fact, if not in name, an 'ex parte' decision."

---

cie case for denying a nationwide registration; and it won't do to suggest that such a prima facie case was not made by imagining that no

more than one sale was made by opposer there in each of its 12 states of first use in which the applicant had never used her mark.

In its rationalization of its decision to reverse the TTAB refusal of registration, the first error of law by the majority is in its statement that the evidence is insufficient because:

> Appellee's evidence of third-party use fails to allege or establish that such use predates the commencement of use by appellant of its mark.

It does not have to. One of the fundamental facts about trademark rights is that they are not static. While they may come into being by first use, they are easily lost. Assuming appellant was the first user of GIANT FOOD in the United States and could have obtained an unrestricted registration in 1936, it does not follow that it will necessarily remain in that position forever. Suppose in the course of time the mark became descriptive? What would it avail the first user that all uses by others were subsequent to its own? As the Solicitor said, "It may be safely conceded that there is no evidence that anyone has 'previously used', i. e., at a time prior to appellant's first use * * * ." Why "safely concede"? Because it makes no difference to the correct outcome here.

The majority, in support of this point, places much weight on *Hollowform.* What was the *Hollowform* situation? The issue was the sufficiency of an opposer's pleading and it arose on an applicant's motion to dismiss it as insufficient. We affirmed the PTO holding dismissing the notice of opposition because opposer alleged only uses which were subsequent to applicant's filing date. The sole question was opposer's standing to oppose. There is no such issue here. The issue here is appellant's right to register. The issue is not whether a single subsequent user can prevent registration, as the majority opinion would imply in saying of the *Hollowform* opinion that "much the same rationale is applicable here." That is nonsense. The question here is not a right to oppose, but a right to register, and registration was not denied because of any right of appellee. It is being denied—"ex parte" as the majority

says—by the PTO on the basis of evidence. Appellee's only concern with this is that it *produced* the evidence on which the PTO acted.

The majority opinion clearly sets forth what that evidence shows, omitting some additional evidence I will mention. It shows that prior to the time the TTAB refused registration—and I quote the majority—"there were some 22 'GIANT FOOD' supermarkets in 16 different cities and 59 other users of 'GIANT' alone or with a prefix or suffix in food merchandising in 15 other cities. These are all unconnected with appellant or appellee." This evidence was from the personal observation and inspection of the stores by appellee's witness in the fall of 1971. Other documentary evidence in the form of "Yellow Pages" from local telephone directories obtained from the library of Congress shows, in the period April 1970–January 1971, the following: Harrisburg, Pa., 3 Giant Food Stores Inc.; Kingsport, Tenn., 2 Giant Food Markets Inc.; Greater Houston, Tex., Giant Food Discount Center and Giant Foods; San Luis Obispo, Calif., 3 Giant Food Markets; and Sacramento, Calif., 3 Giant Foods.

How can anyone suggest that this fact situation is in any way comparable to the merely pleaded fact in *Hollowform* (there was no evidence) that opposer—a single commercial entity—had used its mark, TOP KAT for campers, in twelve western states, which could have meant no more than the sale of one camper in each of the twelve. Here we have *supermarkets,* at least twenty-two of them, scattered all over the country, operated by many different companies, using the very mark appellant wants to register, and many dozen more using almost the same mark. We can take judicial notice of how a supermarket operates. The application here is to register GIANT FOOD for services. Supermarkets render services on a continuous daily basis to hundreds of customers under large signs (which the evidence shows in pictures) announcing to passers-by as well as to customers that they are GIANT

FOOD markets. This is not comparable to a few sales of a single item of merchandise by a single company as in *Hollowform*.

Under these circumstances, which are not denied by appellant, it simply cannot be said that GIANT FOOD is a trademark or service mark "by which the services of the applicant may be distinguished from the services of others"[1] *throughout the United States.* Regardless of how long appellant has been using its mark, or how good a trademark or service mark it may be in its territory, or how registrable it may have been twenty or thirty years ago or more, as of now it simply does not comply with the basic § 2 prerequisite to registration, namely, that it shall *distinguish* appellant's services "in commerce." What does GIANT FOOD indicate to someone in Harrisburg, in Houston, in San Luis Obispo, or in the 13 to 38 other cities where GIANT FOOD or the like is in use? It certainly does not indicate appellant. It indicates "others." The PTO has the evidence that GIANT FOOD does not and cannot distinguish appellant's services from the services of others. That is all it needs to make a strong prima facie case for denying a nationwide registration under the statute. Appellant says the evidence is insufficient because nobody has been shown to be a *prior* user. The majority appears to agree. I do not.

The majority says:

Appellant has made a sufficient showing that its mark is capable of distinguishing its services from the services of others *in its market area* * * *. So far as the record reveals, appellant was the first to use the mark in commerce. *No more is required by the statute.* [My emphasis.]

I think that simply is not the law. The majority has not cited any authority for its view of what the law requires. I think reason is on my side and some authority too.

What the majority suggests as the law is that the operator of a single GIANT FOOD grocery store in a place like the District of Columbia or near any state border where customers come from two or more states, so that the operation is "in commerce," can wait for thirty or forty years to apply for registration, during which period hundreds or thousands of other GIANT FOOD markets have cropped up in every state in the Union, and get a nationwide registration because he is prior and the statute requires "no more." I have exaggerated the facts—a little—but that is a good way to test the proposition. I think this view is as ridiculous as saying that today the *first* person to use the term "supermarket"—if he knows who he is and can prove it—can register that word as a service mark because no one can prove he was prior. In the latter case we would say the reason for denial is descriptiveness. In the former it is lack of distinctiveness, when viewed on a nationwide basis as it must be. The two grounds are not unrelated. Descriptiveness and lack of distinctiveness both are the result of widespread use by many.

When, as here, the ground of refusal is lack of distinctiveness, nationwide, there is no reason to produce evidence beyond what is necessary to establish that lack. The majority faults the evidence, first, because it does not prove any prior uses and, second, because it "fails to establish what common-law rights, if any, have accrued to third parties * * *." But we are not concerned here with what the *rights* of third parties may be; we are concerned only with appellant's present right to nationwide registration. Under the statute and on the evidence of record, it has no such right.

The majority claims not to be ignoring nationwide commercial reality. I think

---

1. I am quoting from section 2 (15 U.S.C. § 1052), substituting the word "services" for the word "goods" therein in accordance with section 3 (15 U.S.C. § 1053). Section 2 is entitled, "Trademarks registrable on principal register."

clearly it is. The majority would only take cognizance of such reality "by means of proper evidence." That evidence, to satisfy it, would apparently have to prove just *what* rights the *third* parties have. My position is that it does not matter what rights third parties have—I am therefore not concerned with them. This is not any longer a fight between appellant and *any* other party. Appellee's counsel was well aware of that when he stood in court wondering out loud just what he was doing there, suggesting that the proper person to be there in his place was the Commissioner. This dispute has moved into another arena, and the PTO is representing the public interest.[2]

The majority suggests that the purpose of the Trademark Act of 1946 was to provide for constructive notice, which is true. But it had other purposes, such as to provide a register of marks reflecting commercial realities. I consider it farcical—as I think the TTAB did—to give appellant a registration which, under § 7(b) (15 U.S.C. § 1057), makes appellant prima facie the owner of an "exclusive right to use the mark in commerce," which, of course, means interstate commerce. "Exclusive right" means the right to *exclude others* from using it throughout the United States. The evidence before us is more than sufficient to show that appellant clearly has no such right. It might have had a right to do so had it behaved differently over the years and had "policed" its trademark right as the first user from the beginning. But it did not and, as every business man learns sooner or later, trademark rights can be lost through inaction. The originally "virgin territory," as the majority terms it, has been deflowered and grown up to weeds; GIANT FOOD markets have sprung up all over the country. As the majority recognizes, only part of the virgin territory is left now. State boundaries are not determinative; market areas rather are.

Perhaps appellant can enter it without conflict by *actually* entering it. I cannot conceive that the purpose of the statute was to let appellant enter it constructively with a nationwide registration under the present circumstances. There are altogether too many potential conflicts.

The majority states:

The fact that third-party rights are alleged * * * is not material to appellant's right to registration.

In the first place, we are not dealing with an *allegation* of third-party rights. The fact is that third-party *uses* have been *proved*. The evidence of such uses is, indeed, very material to appellant's right to the registration it seeks. It is simply not the law that concurrent use proceedings are the only means by which nationwide registration can be denied appellant. The majority cited neither statute nor case to support that allegation.

The precedent I wish to mention is our decision in *DeWalt, Inc. v. Magna Power Tool Corp.*, 289 F.2d 656, 48 CCPA 909 (1961). That was a trademark opposition in which the applicant sought to register the term "power shop" for woodworking saws, and the question arose as of what time the right to register should be determined. We said:

* * * the situation must be judged and the right to registration decided on the basis of the factual situation as of the time when registration is sought.

I think this applies here where the TTAB refusal to register was based on the situation as it existed at the close of testimony in these consolidated proceedings. Whatever rights to register GIANT FOOD as a service mark appellant may have had at any given time in the past forty years, they are not relevant to a determination of whether appellant is

---

2. It should not be forgotten that this appeal is by the *winner* of both the opposition and the interference.

entitled to a registration of the mark *now,* or as of a date no earlier than its February 1969 filing date. In this case, as in *DeWalt,* the record shows that as of the time the TTAB determined to refuse registration, the nationwide situation with respect to the use of GIANT FOOD and confusingly similar marks was such that the mark did not serve to distinguish appellant's services from those of many others, regardless of what rights those "others" had to use the same or similar marks. On the time as of which registrability is to be determined, see also *In re Thunderbird Products Corp.,* 406 F.2d 1389, 56 CCPA 969 (1969).

The evidence was entirely sufficient, at least prima facie, to support the TTAB's refusal to register and to show that appellant is not entitled to a registration carrying, nationwide, the presumptions attaching by reason of § 7(b). GIANT FOOD has been shown not to be capable, across the nation, of distinguishing appellant's services from the services of others, and the mark does not fall within § 2(§ 3). Appellant has not contradicted the evidence; indeed, its own witness seemed well aware of the situation and was shut off by counsel from saying more about it than he did. I know of no basis for the majority's statement that appellant has had no opportunity to rebut the evidence. Certainly the record does not show appellant ever attempted to do so. It is clear to me that it would not be possible to rebut the existence of the "Yellow Pages" listings or the GIANT FOOD markets that the affiant visited, described, and photographed. No further evidence is necessary.

For the foregoing reasons I would affirm the board.