**THE SURF CLUB, a corporation not for profit, organized and existing under the Laws of the State of Florida, v. TATEM SURF CLUB, INC., a corporation for profit, organized and existing under the Laws of the State of Florida.**

10 So. (2nd) 554                                        Division B
April 10, 1942          On Petition for Rehearing July 10, 1942
    Rehearing Granted En Banc November 17, 1942
    Further Rehearing Denied December 11, 1942

408

McKay, Dixon & DeJarnette, for appellant.
Francis M. Miller and George H. Salley, for appellee.

THOMAS, J.:

Appeal was taken from an order granting a motion to dismiss the amended bill of complaint filed by The Surf Club, a corporation not for profit, against Tatem Surf Club, Inc., a corporation for profit, containing a prayer for a decree restraining the use by the latter of "the words 'Surf Club' or the word 'Surf' as applied to a social or purportedly social organization. . . ."

Allegations which plaintiff proposed to prove as a foundation for the relief sought were: that it had been in existence and operation as an exclusive social club for many years and owned and maintained vari-

ous facilities for the pleasure, entertainment and comfort of its members; that it had a proprietary interest in the words "surf club" by which it had long been known; and that membership in the association carried with it great prestige. It was averred that the defendant was chartered in 1940 and was engaged in maintaining facilities of a type similar to those of the plaintiff which are available to the public for a charge and to the patrons of The Tatem Hotel.

It was alleged that the use by the defendant of the words "surf club," "tends to produce confusion in the minds of persons having business dealings with the plaintiff and in the minds of the general public, and tends to and does identify the plaintiff and its members with activities . . . and persons not actually connected with the plaintiff . . . and such confusion tends to and does disparage and destroy the prestige connected with the membership in the plaintiff . . . ." Succinctly stated, the damage claimed is the loss of prestige by reason of the confusion which the use of the words "surf club" by defendant causes or tends to cause. It cannot be deducted from the allegations that the parties were competitors, one being purposely exclusive, the other seeking the patronage of the public.

The primary question is the right of the defendant to use the word "surf" which is variously referred to as generic, geographic and descriptive. The Court recognized in Addison v. Hooks, 91 Fla. 337, 107 So. 623, cited by both parties in their briefs, the general rule that geographic names are considered common property and may not in ordinary circumstances be appropriated as trade names. The case dealt with the use of the name of a city in designating a certain

manufacturing business located in it. In the same opinion a qualification to the rule was recognized, that is, that such a name may acquire a secondary significance or meaning entitling the user to protection if the use has been so connected with a patricular type or kind of business as to have come to denote not only the place and the name of the manufacturer but also the excellence of a product. It is the contention of the appellant that by the long use of the words in its title they have attained a secondary meaning under the exception to the rule and that, therefore, they are entitled to a decree of the court enjoining the use of the words by the defendant.

We have the impression from an examination of many authorities that the purpose of the exception is the protection of the public. If a corporation has so long used words of geographic definition that they have become identified with a product of fine quality later use of the same or a similar title might result in there being foisted on the public goods of an inferior quality.

The generic word "surf" is so comprehensive as to designate any place where the waves break on the shore and the word "club" is as broad in its use or application. Under the general rule that we have stated we are of the opinion that the plaintiff could not have been protected in the use of these words.

We have met much difficulty in our search for a decision involving facts resembling those stated in the present bill. There are numerous opinions dealing with the exception where business corporations are involved but here, of course, the controversy exists between a social organization purposely exclusive and not catering to the public and one offering like ad-

vantages but openly seeking public patronage. It is fairly clear that the basis for the concept "secondary meaning" was the prevention of deception of the public but in the cases we have studied involving social or recreational organizations that factor is not emphasized and the principal element seems to be the effect on the prior user of the adoption of a similar name by a newer association of the same character. Benevolent & P.O.E. v. Improved Benev. & P.O.E., 205 N. Y. 459, 98 N.E. 756, L.R.A. 1915B, 1074, Ann. Cas. 1913E, 639.

When it is considered that the word "surf" could be used to describe numberless miles of beaches and the word "club" countless associations of great variety, it seems to us that joining with them the article "the" could not, regardless of the length of the use, invoke the general rule. These generic words immediately suggest recreational and social advantages available at a beach resort and the plaintiff did not have the pre-emptive right to employ them as title. Moreover, when the defendant used as a prefix the proper name "Tatem" it did all that could be expected of it to distinguish its activities from those of the plaintiff and this in itself created a dissimilarity which should preclude any confusion which would culminate in injury to any of the rights of the plaintiff.

In fine, we have the conviction that the words are descriptive of the location of both the plaintiff and the defendant and of the activities of the litigants also, therefore, the one may not employ them to the exclusion of the other. (See Restatement of the Law of Torts, American Law Institute, page 579.) It is our view also that had the plaintiff the right to their use it was not entitled to injunction against the de-

fendant in view of the incorporation in its title of the proper name.

The decree is affirmed.

BROWN, C. J., TERRELL, and CHAPMAN, JJ., concur.

ON PETITION FOR REHEARING

BROWN, C. J.:

We think we should grant a rehearing on ground 3 of the petition, which alleges that in the Court's opinion we overlooked the fact that by Chapter 20840, Acts of 1941, the Legislature had established as a public policy that, "to prevent further misrepresentations and abuses," no corporate or other form of business venture conducted for profit shall use the word "club" as a name, designation or style, or to do business for profit under any trade name or designation or style which includes the word "club." Violation of the Act is made a criminal offense. The Act expressly exempts from its operative effect all organizations which have used the term "club" continuously for two years prior to June 1, 1941.

While this statute was not discussed in the Court's opinion, it was thought that this Act could not apply here, because the State had granted appellee a charter in 1940 under the corporate name of "Tatem Surf Club, Inc.," as a corporation for profit, and that the right to use such name could not be questioned by any party other than the State itself, in view of the fact that appellee was incorporated by the State some seven months before the Act was adopted. This third ground of the petition raises an important question, however, upon which we think the court should grant a rehearing on briefs to be filed in fifteen and ten days.

WHITFIELD, TERRELL and BUFORD, JJ., concur.

CHAPMAN, THOMAS and ADAMS, JJ., dissent.

ON REHEARING GRANTED

WHITFIELD, J.:

Chapter 20840, Laws of Florida, became effective upon approval by the Governor June 12, 1941. The Act is

"An Act to Declare the Public Policy of the State With Reference to the Use of the Word or Term 'Club' as a Name, Designation or Style for Business Ventures, and Prohibiting Such Use: Defining the Permissible Use of the Word 'Club' as a Name, Designation or Style for Persons, Firms, Associations and Corporations, and Prescribing Penalties for Misuse Thereof.

*"Be It Enacted by the Legislature of the State of Florida:*

"Section 1. That it is hereby declared to be the public policy of this State to prevent further misrepresentations and abuses arising from the use of the word or term 'club' as a name, designation or style for corporate or other forms of business ventures conducted for profit, so that such ventures may not, as a means of soliciting patronage, be misrepresented and foisted upon Federal, State or Municipal Governments or the public under the guise of social, religious, educational, political, benevolent or similar associations or non-profit corporations, or to achieve tax benefits or other preferences and advantages intended only for bona fide organizations having merely social, religious, educational, political, benevo-

lent and/or other similar non-profit purposes, and conducted solely by and in behalf of the members.

"Section 2. That the word or term 'club,' when used or employed as a name or designation, shall be held only to mean and indicate a group or association of five or more bona fide members organized and associated together, whether non-profit incorporated or not, for the mutual advantages to be derived solely from social, educational, religious, political, benevolent or similar purposes and activities, and conducted by and in behalf of the constituent members; and shall not be used or employed as a trade name or as a designation or style for business ventures or enterprises, or as a guise for commercial activities, operated for financial profit; provided, however, that this Section shall not apply to racing, jockey or kennel clubs, licensed by and conducted under the control and supervision of the Florida State Racing Commission.

"Section 3. From and after three (3) months after the date when this Act shall become effective, it shall be unlawful for any person, firm or corporation, directly or indirectly, to do business for profit under any trade name or designation or style which includes the word or term 'club;' provided, however, that this shall not prevent any person from receiving due compensation from any bona fide club as herein defined for lawful services rendered to such club and its members in pursuit of its lawful club activities; and provided further, that membership privileges shall not be extended by any club as herein defined to the general public or to any persons in any manner whereby the intent and purpose of this Act may be evaded or frustrated.

"Section 4. It shall be unlawful for any person, firm or corporation to oraganize or operate as a club for purposes among which shall be included the objective of obtaining tax or license exemptions, preferences, or advantages by virtue of its designation or style as a club, unless the same be expressly entitled thereto because of its actual non-profit club activities, as herein defined..

"Section 4-A. The provisions of this Act shall not be applicable or enforcible against those organizations and institutions which have used designation of the term 'Club' continuously for two years prior to June 1, 1941.

"Section 5. Any person, firm, association or corporation violating any provision of this Act shall be guilty of a misdemeanor, and upon conviction thereof, shall be fined not to exceed One Thousand ($1,000.00) Dollars or imprisoned in the County Jail not to exceed six (6) months, or both, in the discretion of the Court.

"Section 6. If any word, phrase, part or section hereof is held to be invalid, such invalidity shall not affect any other portion hereof.

"Section 7. All laws or parts of laws in conflict with this Act are hereby repealed.

"Section 8. This Act shall become effective on its becoming a law.

"Approved by the Governor June 12, 1941.

"Filed in Office of Secretary of State June 12, 1941."

See 310.31 to 310.36 Florida Statutes 1941.

An amended bill of complaint filed November 3, 1941, by "The Surf Club," a corporation not for profit

under the laws of Florida against "Tatem Surf Club, Inc.," a corporation for profit under the laws of Florida, alleges:

"1. That the plaintiff . . . is now and has been for many years last past, in existence and operation as an exclusive social beach club for members only, in Dade County, Florida, at 91st Street and the Ocean, in the Town of Surfside, which immediately abuts on the north to the City of Miami Beach, Florida. The plaintiff owns and operates a large and elaborate Club House and other facilities including lounge rooms, ball rooms, meal service, swimming pool, cabanas, locker rooms and other amusement and recreational facilities for its members and their guests. The plaintiff has a proprietary interest in its name and in the combination of words 'Surf Club,' and in the use of the word 'Surf' as applied to a social or purportedly social organization. The plaintiff has become well and favorably known to the public, and as a credit risk. In the community in which the plaintiff's club house and in which the defendant's place of business are located, the combination of words 'Surf Club' has become generally understood as referring solely to the plaintiff and to the Club House in which it conducts its activities; and the word 'Surf' as applied to a social or purportedly social organization is generally understood to refer solely to the plaintiff and to the club house where it conducts its activities. The plaintiff has adopted a distinctive type and color of stationery and a distinctive color of ink is used in printing thereon. Membership in the plaintiff, because of the high class and exclusive nature of its membership, carries with it a social prestige without superior, not only in Dade County,

Florida, but also in other communities throughout the United States from which winter visitors to this area come. Such prestige constitutes a substantial part of the value of membership in the plaintiff.

"2. That the defendant was granted a Charter as a corporation for profit on the 9th day of November, 1940, and has engaged, or is about to engage in the business of operating for profit a bar, cocktail lounge, and other similar facilities, and of renting cabanas or bath houses and lockers and dressing room facilities at 43rd Street and the Ocean, Miami Beach, Florida; said facilities are available, as the plaintiff is informed and believes, to large sections of the general public upon payment of fees, as well as to guests of the Tatem Hotel, and the defendant is engaged in soliciting 'memberships' in the purportedly social organization conducted by the defendant; such 'memberships' being no more than privileges to use such facilities, upon the payment of fees and charges. The defendant is using stationery and printed matter very closely simulating the distinctive color of stationery and ink adopted by the plaintiff.

"3. That the use by the defendant of the combination of words 'Surf Club' in the name of the defendant and the use of the name 'Surf' as applied to a social or purportedly social organization, tend to *do* produce confusion in the minds of persons having business dealings with the plaintiff and in the minds of the general public, and tends to and does identify the plaintiff and its members with activities, social and otherwise, of places and persons not actually connected with the plaintiff and over which it has no control, and such confusion tends to and does disparage and destroy the prestige connected with the

membership in the plaintiff, all to the great and irreparable injury, damage, embarrassment and humiliation of the plaintiff and its members. That the plaintiff has unsold 'Memberships' available for sale to persons eligible for membership and admitted thereto in accordance with the charter and by-laws of the plaintiff.

"Wherefore, the Plaintiff Prays:

"1. That a temporary restraining order or injunction may be issued by this Honorable Court, enjoining and restraining the defendant, and all persons acting by, through or under its authority, from using the combination of the words 'Surf Club' or the word 'Surf' as applied to a social or purportedly social organization during the pendency of this suit.

"2. That upon final hearing such relief may be made permanent."

The bill of complaint was dismissed on motion and plaintiff appealed.

The decree of dismissal was affirmed April 10, 1941. A limited rehearing upon briefs to be filed, as stated in the opinion prepared by the Chief Justice, was granted. We have no desire to depart from the original opinion. As to the questions dealt with in that opinion, we adhere fully to what was so well stated in the opinion. But the question as to the effect of Chapter 20840 was not dealt with in our original opinion because it did not clearly appear that this question was expressly raised in the court below. However, it was stated as one of appellant's "grounds for adjudication," and was also argued in appellant's original brief on this appeal. It is true that the amended bill did not pray that the defendant be enjoined from using only the word "club" in its name,

but only asked for an injunction against the use of the words "Surf Club" or "Surf." However, Section 28 of the 1931 Chancery Act provides that "Every bill shall be construed to pray for general relief." So, when Chapter 20840 is considered, we are of the view that there was equity in the bill.

Furthermore, Section 30 of the Chancery Act provides that facts occurring after the institution of the suit, if introduced by amendments, may be used in support of the equity of the bill.

As it is invoked in this case the statute is not an ex post facto law because this is not a criminal prosecution. And besides, the statute makes it unlawful from and after three months after the Act shall become effective "to do business for profit under any trade name or designation or style which includes the word or term 'club.' " The Act became effective June 12, 1941, and the amended bill of complaint praying an injunction filed December 3, 1941, alleges that the defendant "has been engaged, or is about to engage in" the business of operating for profit a bar," etc.

The bill of complaint is brought by a corporation not for profit which is entitled to use the word "club" in its corporate name and to a remedy for injury to its rights under the statute above quoted. The relief sought is not to enjoin the defendant corporation for profit from transacting its business in accordance with its charter but to enjoin the use of the word "club" in its name, which use is expressly forbidden by a statute, and such forbidden use is alleged to be an irreparable and peculiar injury to the plaintiff which gives it a right to appropriate remedy under Section 4, Declaration of Rights, the members of the corporation not for profit being individual persons.

Defendant's corporate charter was granted to it November 9, 1940, and the statute forbidding the use of the name "club' became effective June 12, 1941; but such statute does not violate any contract rights of the defendant, since forbidding the use of the word "club" in the name of the corporation does not violate contract rights of the corporation 'for profit under its charter but merely requires defendant to discontinue the use of the word "club" in its name, the corporation having the privilege of applying for a desired lawful name to be duly given to it under the law.

The statute states that its enactment declares "it to be the public policy of the State to prevent further misrepresentation and abuses arising from the use of the word or term 'club' as a name" as provided therein; and the statute is an appropriate means to the desired objective.

While the statute became effective upon its approval by the Governor June 12, 1941, the provision making the forbidden use of the word 'club' unlawful as stated did not become operative for three months after the Act became effective. This prevented any hardship to the defendant, since it gave ample time to eliminate the use of the forbidden word from the name of the corporation and to obtain a new name in due course.

Authorized business activities of the defendant are not affected by the statute, and the sovereign power of the State affords ample power "to prevent further misrepresentation and abuse" in the use of a corporate name, even if the statute be enacted after a corporation is chartered, where the name first given

proves to be deleterious to the public welfare, and the remedy is appropriate and not illegal.

The continued use as the corporate name of "Tatem Surf Club, Inc." by the defendant is clearly *a violation of the statute;* the alleged injury to plaintiff is substantial and peculiar to its statutory rights. The elimination of the word "club" from defendant's corporate name does not affect the defendant's authorized business franchises or rights; and a lawful name may be used. The allegations show justiciable injury to plaintiff having a prior lawful right, and the law affords appropriate remedy by due course of law in order that right and justice may be administered.

Being a statutory corporate entity not for profit, its subscribers and members being individual persons, does not deprive plaintiff of its right to have appropriate remedy under the laws of this State. See Sec. 4, Decl. Rts. Fla. Const.; Cape May Yacht Club v. Cape May Y. & C. Club, 81 N. J. Eq. 454, 86 Atl. 972.

The decree is reversed and the cause remanded for appropriate proceedings not inconsistent with this opinion.

BROWN, C. J., TERRELL, BUFORD, and ADAMS, JJ., concur.

CHAPMAN and THOMAS, JJ., dissent.