**CITIBANK, N.A., Plaintiff-Appellee,**

v.

**CITIBANC GROUP, INC., et al., Defendants-Appellants.**

**No. 82–7214.**

United States Court of Appeals, Eleventh Circuit.

Feb. 16, 1984.

Rehearing and Rehearing En Banc Denied April 2, 1984.

James B. Gambrell, Pravel, Gambrell, Hewitt, Kirk, Kimball & Dodge, Houston, Tex., for plaintiff-appellee.

Thad G. Long, Bradley, Arant, Rose & White, Linda Friedman, Birmingham, Ala., for defendants-appellants.

Before HILL and VANCE, Circuit Judges, and TUTTLE, Senior Circuit Judge.

JAMES C. HILL, Circuit Judge:

Citibanc Group, Inc., and eight of its subsidiaries, defendants in the district court (Citibanc or defendants) appeal from the judgment of that court in favor of plaintiff Citibank, N.A. (Citibank or plaintiff). Plaintiff sued defendants for infringement of its federally-registered trademark and service mark "Citibank," seeking an order prohibiting defendants from doing business as "Citibanc." The district court held plaintiff's mark valid and plaintiff's right to use the mark to be superior to any right that defendants might have in the mark. The court decided that neither laches nor estoppel bars plaintiff from relief and, finding that defendants had infringed plaintiff's mark, granted the requested relief. We find no error in the result reached by the district court.

Plaintiff, a wholly owned subsidiary of Citicorp, is a chartered national banking association with its principal office in New York City. Defendant Citibanc Group, Inc., is a bank holding company with its principal place of business in Alabama. Citibanc Group or its majority shareholders own in whole or in part the other eight defendants in this case, which, with one exception, are named "Citibanc of (name of town)".[1] The eighth subsidiary is Citibanc Computer Systems, Inc. With the exception of the computer company, which performs services for the banks, the subsidiaries engage in normal banking operations in various cities in Alabama.

---

1. We will refer collectively to all defendants as Citibanc.

Plaintiff bases its suit on its claim of ownership of the trademark and service mark "Citibank," arguing that defendants' use of "Citibanc" infringes its rights. At trial, the defendants denied these allegations and asserted that laches and estoppel bar plaintiff from relief. Defendants also counterclaimed contending that plaintiff's mark is invalid for various reasons. On appeal, defendants have raised specific points of error, and we will discuss the facts necessary to our decision of each specific point below. Helpful to a basic understanding of the case, however, is a review of the name history underlying the contentions of both plaintiff and defendants.

Plaintiff first employed a derivative of the name "City Bank" when it was chartered as The City Bank of New York in 1812. In 1865, when the National Banking Act was adopted, the bank became nationally chartered and changed its name to The National City Bank of New York. Plaintiff used the name City Bank or a variation of the name for various purposes through the 1800's and into the 1900's. In 1955, the plaintiff merged with the First National Bank of New York to become The First National City Bank of New York. In 1962, plaintiff changed its name to First National City Bank. In 1960, plaintiff registered the mark Citibank for use in connection with banking services, and, in 1976, again changed its name, this time to Citibank, N.A.

The name history of the defendants begins in 1955 when the partnership of Wilbanks and Wilbanks purchased the controlling interest in The Peoples Trust & Savings Bank of Goodwater, Alabama. Subsequently, the partnership acquired controlling interests in the City Bank of Tuskeegee (1967), City Bank & Trust Company of Roanoke (1967), The Farmers and Merchants Bank of Lineville (1968) and the Covington County Bank of Andalusia (1969). The use of the term City Bank by the Roanoke bank began when it was incorporated in 1931; this use predates the use of any other defendant. Except for the City Bank of Tuskeegee, incorporated in 1933, no other predecessor to any defendant used the term in its name before 1969. During the 1960's,

the other two banks changed their names to incorporate the term City Bank.

In 1972, Citibanc Group, Inc., was incorporated and approved by the Federal Reserve System as a bank holding company. The holding company exchanged its stock for the bank stock of the Wilbanks' partnership. During the next few years, the holding company acquired a majority interest in the other defendant banks and created the computer subsidiary. On January 23, 1977, the board of the holding company decided that each subsidiary should adopt a similar name using the terminology Citibanc of (name of town), and the various banks did so in February, 1977.

## I. THE VALIDITY OF THE PLAINTIFF'S RIGHTS

### A. The Common Law and the Lanham Act.

Defendants argue that plaintiff cannot assert its rights under the Lanham Act because defendants' common law rights predate both the plaintiff's 1960 registration and the 1947 passage of the Act; thus, argue defendants, their rights are preserved by section 33(b)(5) of the Act, 15 U.S.C. § 1115(b)(5) (1976), section 15 of the Act, 15 U.S.C. § 1065 (1976), or section 2(d) of the Act, 15 U.S.C. § 1052(d) (1976). The defendants contend that the name of each bank in Alabama can be traced to the names of the two Alabama banks using the term City Bank prior to 1947. Defendants argue that, because Citibanc is a mere variation of City Bank, they may "tack on" to the rights of those two banks and use Citibanc throughout the state of Alabama.

The plaintiff maintains that defendants' common law rights to City Bank were frozen at the time of the registration in 1960 because plaintiff was the senior user of the mark. The defendants, according to the plaintiff, thus could use "City Bank" only in two relatively small towns in Alabama. Not willing to concede this use to the defendants, however, the plaintiff argues that by changing their names to Citibanc the defendants wrongly changed their names "closer" to the registered mark Citibank

and abandoned any rights they possessed in the two-word version of the name. The district court substantially adopted the plaintiff's argument.

■ The various arguments set forth by both parties are complex, and, to a large degree, they focus on issues we need not address to decide this case. The issue before us is whether defendants can use the term Citibanc in Alabama. We need not decide whether the defendants would be able to use the term City Bank in Alabama except to the extent that use of this term allows defendants to use Citibanc under one of the various grandfather provisions of the Lanham Act. We, however, do not perceive this issue to be of great difficulty. Assuming for the moment that plaintiffs validly registered and obtained trademark rights to Citibank in 1960, defendants, regardless of their right to use the term City Bank, could not in 1967 adopt the term Citibanc. *See Holiday Inns, Inc. v. Holiday Inn,* 364 F.Supp. 775 (D.S.C.1973), *aff'd mem.* 498 F.2d 1397 (4th Cir.1974).

In *Holiday Inns,* the defendant had acquired local rights to use the mark "Holiday Inn" before the plaintiff's Lanham Act registration. After the registration, however, the defendant embarked on a campaign to associate itself with the plaintiff in the public eye. For example, defendant constructed and installed a sign virtually identical to plaintiff's well-known, nationally-used sign. 364 F.Supp. at 783. The court enjoined this action by the defendant. *Id.* at 786–87. We think this case presents substantially the same problem as the *Holiday Inns* case. Defendants have adopted a mark—Citibanc—substantially more similar to plaintiff's mark than the two-word version—City Bank. We are mindful that the two versions sound alike, but we perceive a difference between the two terms. Citibanc and Citibank are "manufactured" words. They are "not to be found in the dictionary." *See Sweetarts v. Sunline, Inc.,* 380 F.2d 923, 927 (8th Cir.1967) (discussing term "Sweetarts"). We do not decide that the two affected defendants could have

continued to use the term City Bank in the two Alabama towns, nor is the issue now before us as to the right of the other defendants to incorporate such term in their names. It is clear that defendant has run afoul of the principle stated in *Holiday Inns* by adopting a term much closer to plaintiff's registered trademark than the term it previously used.

### B. *Fraud in the Registration.*

Defendants contend that plaintiff may not rely on the 1960 registration because that registration is invalid. Defendants argue principally that plaintiff, in obtaining registration of the mark Citibank, fraudulently misrepresented to the Patent and Trademark Office that no other banks were using City Bank as part of their names. Defendants also argue that plaintiff misrepresented that its services were "banking services" when the services were in actuality a "Ready-Credit loan plan" and that plaintiff fraudulently filed section 8 and section 15 continuous use affidavits when plaintiff had not continuously used the mark for five years.

■ In reviewing defendants' claims, we review findings by the district court that plaintiff did not commit fraud; these findings are findings of fact and the clearly erroneous standard of Federal Rule of Civil Procedure 52(a) applies. For defendants to have proven fraud, they must necessarily have proven a false, material statement by the plaintiff of a fact that would have constituted grounds for denial of the registration had the truth been known. *See, e.g., Giant Food, Inc. v. Malone & Hyde, Inc.,* 522 F.2d 1386 (C.C.P.A.1975); *Hollowform, Inc. v. AEH,* 515 F.2d 1174 (C.C.P.A. 1975).[2]

■ As to the first claim of defendants, "[i]n the absence of a showing that there is a *prior* third-party use, any common law rights resulting from an innocent subsequent use ..." are not material to the application. *Giant Food,* 522 F.2d at 1394; *Rosso & Mastracco, Inc. v. Giant Food, Inc.,*

---

**2.** This is true even if, as defendants contend, actual fraud need not be shown to cancel the service mark under 15 U.S.C. § 1120 (1976).

Thus, we need not decide the applicability of that section to the case before us.

720 F.2d 1263 (Fed.Cir.1983). The district court specifically found that "[w]hen plaintiff filed its application, ... no other firm, bank or otherwise, was using 'Citibank' as a trade name, trademark, or service mark." Thus, plaintiff was under no obligation to disclose anything to the trademark office. Assuming without deciding that plaintiff should have disclosed all material uses of City Bank does not change our conclusion. The evidence shows plaintiff also to be the senior use of this term.

■ We also find defendants' second and third contentions to be without merit. The district court could properly conclude that it is not fraudulent to represent a loan plan as a banking service. There is also adequate evidence in the record to support that court's conclusion that plaintiff continually used the "Citibank" mark for five years; thus, the plaintiff's section 8 and section 15 affidavits were not fraudulent. We have reviewed the record and have determined that the district court properly rejected the other allegations of fraud set forth by the defendants; thus, we must reject defendants' contention that plaintiff's registration should be cancelled.

### C. The Generic or Descriptive Characteristics of the Citibank Mark.

■ Defendants next contend that plaintiff has no right to prevent them from using the term Citibanc because it is generic or descriptive. See generally Vision Center v. Opticks, Inc., 596 F.2d 111 (5th Cir. 1979). A generic term is one that describes a class to which the individual service belongs; a descriptive term "identifies a characteristic or quality of an article or service ...." Id. at 115. The district court held the term not descriptive, and we agree with that conclusion. The term "Citi" does not describe a class of banking services or a characteristic of banking services. As the district court stated, "[t]he most that can be said for City Bank is that it suggests a modern or urban bank." Slip op. at 49 (emphasis in original). To paraphrase Professor McCarthy, we find that Citibank in-

dicates not a type of service, but a provider of that service. See J. McCarthy, Trademarks and Unfair Competition, § 12.2 at 407–08.[3]

### D. Abandonment.

■ Defendants next contend that plaintiff, even if it once had rights to Citibank, abandoned those rights by failing to use the mark. In order to prove abandonment, defendants must show that plaintiff actually abandoned the use of the mark, and, also, that plaintiff intended to abandon the mark. See United States Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 138 (3d Cir.1981). The Lanham Act provides that failure to use a mark for two years constitutes "prima facie abandonment." 15 U.S.C. § 1127 (1976). In this case, however, the district court correctly concluded that defendants failed to meet the strict burden of proof applicable to abandonment claims. See American Foods, Inc. v. Golden Flake, Inc., 312 F.2d 619, 625 (5th Cir.1963). Although the plaintiff admittedly used Citibank only sporadically before 1976, the use was fairly continuous and clearly sufficient to justify the district court's finding that plaintiff never intended to discontinue using the name.

## II. PLAINTIFF'S ABILITY TO ENFORCE ITS RIGHTS

Defendants contend that, even if plaintiff once had the right successfully to bring suit for infringement, it has forfeited that right.

### A. Preclusive Effect of the Federal Reserve Board's Decision.

■ In 1972, the Federal Reserve Board (FRB) approved the use of Citibanc Group, Inc., for the defendant holding company even though plaintiff objected to that decision. Defendants contend that because plaintiff did not appeal from that decision it is now binding on this court. It is true that, under 12 U.S.C. § 1842(c) (1976), the FRB must consider anticompetitive effects when approving a merger or consolidation of banks. We are not prepared, however,

---

**3.** Because we find Citibank not to be descriptive or generic, we need not address plaintiff's contention that section 33(b) of the Act prevents defendants from raising this claim.

to leap to the conclusion that the FRB's actions are conclusive in a subsequent trademark infringement action.

Defendants cite only two cases in support of their argument; neither case supports the proposition asserted. In *Fund for Gov't Investors, Inc. v. Gov't Investment Trust,* 215 U.S.P.Q. 54 (E.D.Va.1981), the court supported its conclusion that the defendants' names were not confusingly similar to the plaintiff's name by noting that the Securities and Exchange Commission had reached the same conclusion. In *North Dakota v. Merchants National Bank & Trust Co.,* 634 F.2d 368 (8th Cir.1980), the court dealt with the preemption of state unfair competition law by the National Bank Act, 12 U.S.C. § 30 (1976). We can find no indication that Congress intended that the decision of the FRB bind this court or that section 1842 should preempt the Lanham Act. Although the FRB considers the trade implications of its decisions before approving a merger, it does not necessarily conduct the complex trademark analysis required in this case.

To give the weight to the FRB decision urged by the defendants would create an anomalous situation. In the well known case of *Dawn Donut Co. v. Hart's Food Stores, Inc.,* 267 F.2d 358 (2d Cir.1959), the court held that plaintiff could not enjoin defendants' use of a trademark absent a "present likelihood that plaintiff will expand its retail use of the mark into defendant's market area . . . ." *Id.* at 360. The court noted, however, that if the plaintiff later expanded into the defendant's area, it could obtain an injunction against defendants' use of the trademark. *Id.* Assuming without deciding that plaintiff was not doing business in Alabama in 1972 when the FRB acted, applying conclusive effect to the FRB's decision would nullify the *Dawn* holding. We are not prepared to give such weight to a FRB decision.

### B. *Laches.*

Defendants contend that the doctrine of laches bars plaintiff's suit because plaintiff

should have known that defendants were using City Bank prior to 1960, but did not file suit until 1979.[4] After reviewing the facts and the findings of the district court, we hold plaintiff not to be barred by laches in this case. When plaintiff first learned of defendants' adoption of Citibanc as the name of its holding company in 1972, plaintiff wrote letters warning that it regarded the use of Citibanc as an infringement of plaintiff's rights. Plaintiff sent several other letters over the next few years. In 1977, the defendant banks changed their names to include Citibanc. Two years later, plaintiff filed suit in New York.

In *Environmental Defense Fund v. Alexander,* 614 F.2d 474 (5th Cir.1980), *cert. denied,* 449 U.S. 919, 101 S.Ct. 316, 66 L.Ed.2d 146 (1980), the court set forth the elements of laches. The defendant must show: "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable;" and (3) that the delay caused defendant undue prejudice. *Id.* at 478. In addition, in a trademark case, the plaintiff's rights must be protectible. *See Johanna Farms, Inc. v. Citrus Bowl, Inc.,* 468 F.Supp. 866, 881 (E.D.N.Y.1978). In other words, the owner of the mark must have expanded into the infringer's territory such that an action can be maintained. *See Dawn Donut Co. v. Hart's Food Stores, Inc.,* 267 F.2d 358 (2d Cir.1959).

The test for determining laches is a flexible one: the court must examine both the amount of delay and the prejudice caused by that delay. In this case, plaintiff notified defendants of a possible infringement problem before defendants adopted Citibanc. Within a short period of time after plaintiff began widespread use of Citibank in 1976, defendants broadened their usage to Citibanc. During the entire period, defendants knew of plaintiff's objections but nevertheless proceeded to enlarge their use of the term. These actions were taken "with the complete realization that the plaintiff disputed their use and did not

---

4. This suit was brought in New York and dismissed for lack of personal jurisdiction. Plaintiff subsequently filed this action in Alabama.

intend to acquiesce in it." *Finance Co. of America v. Bankamerica Corp.,* 502 F.Supp. 593, 596–97 (D.Md.1980); *see also Clinton Detergent Co. v. Procter & Gamble Co.,* 302 F.2d 745, 49 C.C.P.A. 1146 (1962). Defendants have not relied on the delay of plaintiffs in expanding their use of the mark; indeed, they have expanded their use while asserting their right to do so, in the face of plaintiff's constant complaints. The district court correctly concluded that plaintiff has not been guilty of laches.

## III. LIKELIHOOD OF CONFUSION

Defendants contend that the district court erred in finding a likelihood of confusion between Citibank and Citibanc. We disagree. In reaching its decision, the district court properly analyzed the following factors: the similarity of design, the similarity of product, type of mark at issue, identity of customers, similarity of advertising media, defendant's intent, and actual confusion. *See Safeway Stores, Inc. v. Safeway Discount Drugs,* 675 F.2d 1160, 1164 (11th Cir.1982); *Sun Banks of Florida v. Sun Fed. Savings & Loan Assoc.,* 651 F.2d 311, 314 (5th Cir.1981). The presumption of validity afforded plaintiff's mark under the Lanham Act is not material to this decision. *See American Foods, Inc. v. Golden Flake, Inc.,* 312 F.2d 619 (5th Cir. 1963). In the absence of indications that the district court misapprehended the law, however, we review its conclusion under the clearly erroneous standard of Federal Rule of Civil Procedure 52(a). *Safeway,* 675 F.2d at 1163; *Sun Banks,* 651 F.2d at 314–15. The clearly erroneous standard applies here.

Of the multiple factors, we need not discuss the findings of the district court that plaintiff failed to prove actual confusion, that the similarity of advertising media factor weighs only slightly in favor of plaintiffs, that the identity of service facilities and customers is not dispositive, and that the marks are of virtually identical design.[5] We have carefully reviewed these findings and conclude that the district court reached the proper result in each instance.

Defendants contend that the district court erred by according too much weight to plaintiff's mark after finding it "suggestive, ... not ... coined or ... arbitrary ..., and thus comparatively weak ...." Slip op. at 50. The district court found Citibank more distinctive than City Bank, but weaker than "Sun Bank," the mark at issue in the *Sun Banks* case. Defendants argue that, since the mark in *Sun Banks* was fatally weak, Citibank must also be fatally weak. We disagree with this reading of the case. In *Sun Banks,* there was substantial evidence of third party use, and the defendant's mark, "Sun Federal Savings & Loan," was much less similar to Sun Bank than Citibank is to Citibanc. *See* 651 F.2d at 313–17; *see also Safeway,* 675 F.2d at 1165. Defendants argue that the district court failed to consider the numerous usages of City Bank by various banks, but we think the district court correctly noted that Citibank is stronger than, and different from, City Bank. We need not consider whether the district court intended to characterize Citibank as very weak, or simply weak relative to an arbitrary mark. The test is a multiple factor test, and the mark is certainly strong enough, when combined with the other factors, to support the district court's decision.

Defendants next contend that the district court erred in relying on the timing of the defendants' adoption of widespread use of Citibanc in finding an intent to capitalize on plaintiff's mark. The district court did not expressly make such a finding. The court stated that "there is no evidence, other than that, if any, which can be inferred from the similarity of the names, that defendants have intended to trade upon plaintiff's good will." Slip op. at 22. The court nevertheless indicated that this factor should be "balanced in the plaintiff's favor" because "an inference can be raised of an intent to cause confusion." Slip op. at 53. The district court could properly draw such an inference, and, in weighing the factors,

---

**5.** The respective marks are obviously very similar. *CITIBANK⊕* *⊏⊐CITIBANC OF ALABAMA*

properly balanced this factor with the other factors. The key aspect of this factor is the tendency to show confusion; this is adequately demonstrated by the similarity of the names even without direct evidence of intent. The opinion demonstrates that the district court analyzed the factors with this in mind.

Finally, defendants argue that the district court erred in finding that the plaintiff and defendants offer similar services. The district court noted the obvious similarity of services and correctly realized that direct competition is not required to prove confusion. *See Safeway*, 675 F.2d at 1166; *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609 (7th Cir.1965). In this case, both parties are banks, and this adds substantially to the likelihood of confusion. The danger of confusion that would compromise plaintiff's reputation exists even though the parties may not directly compete for deposit customers. *See* J. McCarthy, Trademarks & Unfair Competition, § 26.6. at 213–17. In addition, there is evidence that plaintiff and defendants compete in the areas of credit card sales and loans. Thus, the district court properly afforded substantial weight to this factor.

We have carefully weighed the factors and find no error in the district court's conclusions as to confusion.

The judgment is

AFFIRMED.

VANCE, Circuit Judge, dissenting:

I cannot agree that Citibank's claim of trademark infringement is meritorious. In my view, it fails for three reasons. First, the circumstances surrounding the 1959 registration application and Citibank's subsequent litigation campaign suggest a strong possibility of fraud. Wholly apart from that, "Citibank" is too weak a mark to merit trademark protection. Finally, our decision in *Sun Banks of Florida, Inc. v.*

*Sun Federal Savings & Loan Association,* 651 F.2d 311 (5th Cir.1981), compels us to find that there is no likelihood of confusion in this case, and hence, no trademark infringement.

A brief review of the facts is in order with respect to the claim of fraud. In 1959, plaintiff filed for federal registration of the servicemark "Citibank." [1] In its papers, Citibank stated that it first made interstate use of that mark in connection with banking services in 1959. Citibank also appended an affidavit signed by one of its vice presidents declaring that "to the best of his knowledge and belief no other person, firm, corporation or association has the right to use said mark in commerce, either in the identical form or in such near resemblance thereto as might be calculated to deceive." The application listed certain registration numbers which the bank already owned. The Patent and Trademark Office gave its approval and awarded registration in 1960.

On the basis of these facts, the district court specifically found that Citibank "did not advise the Patent and Trademark office of any third party users of 'City Bank' in its 1959 federal application ..." [2] Despite its earlier claim that it knew of no confusingly similar marks, however, Citibank subsequently instituted eleven trademark infringement suits against users of "City Bank," "Citibank" and "Citibanc," alleging that these marks created a likelihood of confusion. It threatened another eight banks with suit. Citibank predicated these actions on its supposed rights as the senior user of "City Bank," dating from 1812 and set forth in its 1949 and 1950 registration applications for the servicemark "The National City Bank of New York."

This turn of events strongly suggests that Citibank's original denial of the existence of similar marks was an attempt to conceal the derivation of its mark in order to improve its chances of registration. Un-

---

1. Plaintiff applied under its then current name of "The First National City Bank of New York." To avoid confusion, I shall refer to plaintiff simply as "Citibank."

2. The court below went on to observe that the defendants also failed to reveal the existence of

other users in their recent Alabama applications even though there are other banks in Alabama which use "City Bank" in their names. Plaintiff does not complain, however, that defendant has commenced suit against other third party users predicated on a senior use of the term "City Bank."

der the Lanham Act, 15 U.S.C. § 1051 *et seq.*, generic terms and descriptive terms that lack secondary meaning cannot qualify for federal registration. *Id.* § 1052(e)(1), (f); *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183 (5th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981). Had plaintiff explicitly traced the derivation of "Citibank" to the use of "City Bank," it would have courted outright rejection of its application on the ground that its mark was generic or merely descriptive, as I shall discuss below.[3]

Citibank had good reason to conceal the lineage of its mark in an effort to ensure approval of its application. An incontestable registration allows the owner to assert its mark nationwide, free of all but the common-law defenses enumerated in the Lanham Act.[4] In particular, incontestability bars the defense that the mark is a descriptive term that lacks secondary meaning. *Soweco*, 617 F.2d at 1184–85. With registration, Citibank thus succeeded in bootstrapping its mark from "descriptive" to "suggestive" status. It then proceeded to exploit its newly-gained advantages by filing a battery of lawsuits in which it asserted rights based on its claim to the senior use of "City Bank." Obviously, if Citibank had indicated on its original application in 1959 that it considered the new mark the functional equivalent of "City Bank," the Patent and Trademark Office

would have denied approval on the grounds that the mark was generic or at best descriptive. Citibank's apparently selective ignorance of the existence of rival users permitted it to outflank this obstacle.

In the majority's view, no fraud arose because Citibank, as the senior user of "City Bank," had no duty under 15 U.S.C. § 1052(d) to disclose the possibility of confusion with other "City Banks." *Rosso & Mastrocco, Inc. v. Giant Foods, Inc.*, 720 F.2d 1263 (Fed.Cir.1983); *The Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 670–71 (7th Cir.1982). This mistakes the object of the alleged fraud. Citibank had no motive to conceal the starting date of use, since even a colorable claim of senior use would obviate a charge of fraud in the registration. 1 J. McCarthy, *Trademarks and Unfair Competition* § 20:23, at 814 (1973); 2 J. McCarthy, § 31:21, at 411; *see also, e.g., Haviland & Co. v. Johann Haviland China Corp.*, 269 F.Supp. 928, 936–37 (S.D.N.Y.1967). It did have reason, however, to conceal the generic or descriptive origin of its mark.

When a registrant asserts senior use in circumstances such as these portending an intent to deceive, the way is laid for a conclusion of fraud. *Haviland & Co.*, 269 F.Supp. at 937; *cf. King Automotive, Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 1011 n. 4 (C.C.P.A.1981) (intent to deceive

---

**3.** Citibank asserts that the list of registration numbers it already owned provided notice of potential senior use. According to Citibank, these references directed the Patent and Trademark Office to files that traced the lineage of "City Bank." This is an implausible reading of the case law concerning notice. A litany of registration numbers in and of itself cannot provide notice. The Patent Office's search of "Citibank" did not reveal third party users of "City Bank." *Cf. American Sec. Bank v. American Sec. & Trust Co.*, 571 F.2d 564, 567 (C.C.P.A.1978) (reaching the opposite outcome because a search of "American Security" would lead to third party users of "American Security Bank"); *see Kinark Corp. v. Camelot, Inc.*, 548 F.Supp. 429, 442 (D.N.J.1982).

**4.** Rights of incontestability attach after the mark has been in continuous use for five years following registration. 15 U.S.C. § 1065. Federal registration then confers "the right to preempt all junior users in the nation once the registrant [proves it is likely to expand] into a

remote area." 2 J. McCarthy, *Trademarks and Unfair Competition*, § 26:13, at 229 (1973); *see American Foods, Inc. v. Golden Flake, Inc.*, 312 F.2d 619, 625–26 (5th Cir.1963).

Once the five-year threshold is satisfied, the Lanham Act eliminates the common-law defenses of good faith and lack of knowledge. 15 U.S.C. § 1072; *American Foods*, 312 F.2d at 626–27. No other common-law defenses can be asserted against the registrant except those enumerated in 15 U.S.C. § 1115(b). *Id.* § 1065. Professor McCarthy has noted,

> [I]t is clear that the attainment of incontestability vastly butresses [sic] the legal position of a trademark. Once it becomes incontestable, a registered mark can be legally attacked or defended against, only on a few specifically enumerated grounds. Other than those specific defenses, the registered mark is invulnerable.

1 McCarthy, *supra*, § 19:47, at 742.

necessary before silence regarding third-party use can constitute Lanham Act fraud); *King-Size, Inc. v. Frank's King Size Clothes, Inc.,* 547 F.Supp. 1138, 1166 (S.D. Tex.1982) (same). In the event of fraud, Citibank's registration would not warrant protection from infringement and would be subject to cancellation. 15 U.S.C. § 1115(b)(1). If Citibank were innocent, it would presumably be willing to test the strength of its mark as of 1959 against the stricter common law standards that govern contestable marks. Citibank has made no such offer.

My second point of disagreement proceeds from the first. The majority, in a conclusory fashion, characterizes the terms "City Bank" and "Citibank" as suggestive marks. This determination rests on the erroneous assumption that the traditional trademark classifications are self-contained categories that do not overlap. The case law of this circuit counsels otherwise. We have observed that trademark categories, which "tend to merge imperceptibly from one to another," are "quite frequently, difficult to apply," *Vision Center v. Opticks, Inc.,* 596 F.2d 111, 115 (5th Cir.1979), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980); *see also Soweco,* 617 F.2d at 1182–83.

This case provides a particularly apt illustration of our admonition. The term "City Bank" obscures the traditional distinction between servicemarks and names unworthy of protection by describing the location of both bankers and the services they provide.[5]

---

**5.** In *Vision Center,* we held that the term "Vision Center" was "descriptive of the service provided by a business that deals in optical goods." 596 F.2d at 117. Certainly "City Bank" is no less descriptive of services.

**6.** For the same reason, the restrictive rules governing geographic names come into play. Traditionally courts treat geographic terms as at best descriptive marks, which require proof of secondary meaning. 1 McCarthy, *supra,* § 14:1, at 483. Where the historical use of a geographic term is so closely associated with a type of service that it identifies it, the term is generic. *Id.* at 14:8, at 503. These rules exist to preserve the right for every seller to tell customers the geographical origin of its products. *Id.* § 14:1, at 484.

*See Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938). The proper characterization of "City Bank" is far more elusive than the majority would have it appear. While the words "City Bank" evoke the financial acumen and innovation long associated with urban banking centers, characteristic of a suggestive mark, they also describe a bank located in a city, characteristic of a descriptive or generic mark.[6]

Given the conceptual failure of the traditional categories in the context of this case, it may be useful for us to instead focus on the ends which trademark law serves. Two considerations underlie the determination that the law will only protect marks that identify one merchant's services and distinguish them from another. A mark must be distinctive in order for consumers to identify the merchant who merits their confidence. By the same token, words which describe a class of providers as opposed to specific individuals are names that should remain in the public domain so that all may use them. *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir. 1976); 1 McCarthy, *supra,* § 12:2, at 406.

Both considerations cause me to conclude that "City Bank" is a generic term which cannot receive trademark protection. "City Bank," like "town barber shop," denotes a class of businesses. As a result, this term is peculiarly incapable of pinpointing any particular town's "City Bank" as unique. Likewise, it is difficult to dispute that "City Bank," like "corner grocery," belongs in the

---

"City Bank," unlike most unenforceable geographical terms, refers to a geographical unit with no determined location. We have held that "World," as applied to carpets, is not a geographical term for purposes of the Lanham Act. *World Carpets, Inc. v. Dick Littrell's New World Carpets,* 438 F.2d 482, 486–87 (5th Cir. 1971). We reached this conclusion because "World" neither suggested a specific place of origin nor described the nature of the product. *Id.* Because "City Bank" by contrast describes the setting in which bank services are conducted, it is a geographical term unentitled to trademark protection. *See Surf Club v. Tatem Surf Club, Inc.,* 10 So.2d at 557.

public domain. Innumerable "City Cleaners" and "City Florists" line the pages of metropolitan telephone directories. Indeed, in 1959 over 200 banks used "City" and "Bank" in their tradenames, with 70 using the words in consecutive order. It would be absurd at this late date to bar all banks save one from using this time-honored name. *See First Southern Federal Savings & Loan Association v. First Southern Savings & Loan Association,* 614 F.2d 71, 74 (5th Cir.1980) ("First Southern," as a combination of a generic and geographic term, held unprotectable as a bank name); *Surf Club v. Tatem Surf Club, Inc.,* 151 Fla. 406, 10 So.2d 554, 557 (1942) (holding "Surf Club" a generic name for any club located on a beach).

The phonetic equivalent "Citibank" is too minor a deviation from "City Bank" to warrant protection where otherwise none would issue. *See, e.g., Surgicenters of America, Inc. v. Medical Dental Surgeries,* 601 F.2d 1011, 1018 (9th Cir.1979) ("Surgicenter" equivalent to the generic term surgical center); *Miller Brewing Co. v. G. Heileman Brewing Co.,* 561 F.2d 75, 81 (7th Cir.1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978) ("Lite" a generic term for light beer); *Cummins Engine Co. v. Continental Motors Corp.,* 359 F.2d 892, 894–95, 53 C.C.P.A. 1167 (1966) ("Turbodiesel" a generic name for diesel engines having exhaust-driven superchargers); *Weiss Noodle Co. v. Golden Cracknel & Specialty Co.,* 290 F.2d 845, 847, 48 C.C.P.A. 1004 (1961) ("Ha-Lush-Ka" a generic name for haluska, the Hungarian word for egg noodle); *American Druggists' Syndicate v. United States Industrial Alcohol Co.,* 2 F.2d 942, 943 (D.C.Cir.1924) ("Al-kol" a generic name for rubbing alcohol). As a generic term, "Citibank" cannot qualify for protection either under the Lanham Act, 15 U.S.C. §§ 1052(e)(1), 1064(c),[7] or at common law. *Miller Brewing Co. v. Falstaff Brewing Corp.,* 655 F.2d 5, 7 (1st Cir.1981); *Reese*

*Publishing Co. v. Hampton International Communications, Inc.,* 620 F.2d 7, 12 (2d Cir.1980).

Even assuming that the majority correctly classifies "Citibank" as a suggestive mark, I fail to see how a likelihood of confusion exists here where none existed in *Sun Banks of Florida, Inc. v. Sun Federal Savings & Loan Association,* 651 F.2d 311 (5th Cir.1981). In that case we concluded that "Sun Bank," although arbitrary, was a weak mark due to extensive third party use. This weakness outweighed any confusion created by the identity of services, customers and types of advertising media used. *Id.* at 318–19.

The court below held that "Citibank" is even weaker than the fatally weak "Sun Bank" mark. Since the weakness of the mark required reversal in *Sun Banks,* I see no choice but to order it here. The fact that we have traditionally tolerated a greater degree of resemblance among the names of financial institutions only reinforces this conclusion. *See, e.g., Sun Banks,* 651 F.2d 311 (5th Cir.1981); *First Southern Federal Savings & Loan Association,* 614 F.2d 71 (5th Cir.1980); *Fidelity Bond & Mortgage Co. v. Fidelity Bond & Mortgage Co. of Texas,* 37 F.2d 99 (5th Cir.1930).

The majority explains away *Sun Banks* by noting that "Citibank," while weak, is more nearly similar to "Citibanc of Alabama/(name of town)" than "Sun Bank" was to "Sun Federal Savings & Loan." In so holding, the majority incorrectly gives the element of similarity double weight in balancing the *Sun Banks* factors. The similarity of the mark is a separate factor in the *Sun Banks* analysis which should not be used to resolve any other factor such as the strength of the mark. Having committed this error, the majority then compounds it by allowing the district court to resolve the question of good faith in Citibank's favor on the basis of the similarity in names even though there is no evidence of bad faith.[8]

---

7. The incontestability provisions of the Lanham Act, 15 U.S.C. § 1065, do not bar the defense that the mark is generic. Cancellation of a generic mark may also lie. 15 U.S.C. § 1119; 1 McCarthy, *supra,* § 12:18, at 441–42.

8. I also believe that the district court erred in failing to weigh the factor "identity of service facilities and customers" in favor of defendant. The trial court gave this factor little or no weight. The factor clearly favors Citibanc since Citibank is not chartered to conduct

In sum, I would hold that Citibank's apparent fraud, the weakness of its mark, and the absence of confusion compels reversal.

banking business in the state of Alabama and is not likely to be so licensed at any time in the future. The court below furthermore found that the two banks have no customers in common. This disparity is likely to continue since plaintiff serves large business concerns or wealthy investors unlike the rural businesses and individuals of modest means who bank with defendant.