[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16279
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-01725-LMM

GROUCHO'S FRANCHISE SYSTEMS, LLC,

Plaintiff-Appellant,

versus

GROUCHY'S DELI, INC.,
d.b.a. Grouchy's New York Deli and Bagels,

Defendant,

GELCO OF GA, INC.,
d.b.a. Grouchy's New York Deli and Bagels,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 29, 2017)

Before HULL, WILSON and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Groucho's Franchise Systems, LLC, appeals the summary judgment in favor of Grouchy's New York Deli and Bagels. Groucho's complained that Grouchy's use of a similar name for its delicatessen infringed on Groucho's registered service mark in violation of the Lanham Act and Georgia state and common law. The district court ruled that Groucho's complaint was barred by laches. We affirm.

## I. BACKGROUND

In 1941, Groucho's, a chain of restaurants named for its owner's resemblance to Groucho Marx, opened its first location in Charleston, South Carolina. Groucho's later expanded its operations to more than 20 locations throughout the southeastern United States. In 1997, the owner registered the trade name GROUCHO'S, and in 2003, he registered the service mark GROUCHO'S FAMOUS for labels applied to sauces and condiments. The mark has the words GROUCHO'S FAMOUS printed between two circles that surround a side view of a large man who is wearing a vest and a fedora-style hat, smoking a cigar, and carrying a colossal deli sandwich.

Grouchy's New York Deli and Bagels began serving customers in 2000 in Alpharetta, Georgia. Its owner selected the name Grouchy's to connote its New York-style menu. The service mark features a caricature of a partially bald and

2

grumpy-faced man whose disproportionately large head forms the "O" in the word GROUCHY'S, behind which is a drawing of tall buildings.

In February 2004, Grouchy's received a letter stating that Groucho's had "recently learned . . . [about a] restaurant in the Atlanta area under the name GROUCHY'S," which—it alleged—was "an infringement of [the GROUCHO'S] registered mark." Groucho's stated that it had "plans to open an Atlanta location in the not so distant future," and "[o]nce this occurs, [it] will take the appropriate legal action to stop this infringement." Groucho's advised Grouchy's to "change the name of [its] restaurant before [Groucho's] expands to Atlanta, rather than waiting until a direct conflict occurs."

Groucho's and Grouchy's continued to build their brands. According to Groucho's owner, around August 2005 a franchisee opened a Groucho's in Augusta, Georgia, but that location closed a year later. In September 2005, Grouchy's registered its service mark.

Grouchy's also expanded its operations. In 2005, Grouchy's opened a second restaurant in Norcross, Georgia, which it sold to S&F Deli in May 2010. S&F also obtained a license to use the recipes, trademarks and other proprietary property of Grouchy's. In 2015, Grouchy's terminated the license given to S&F.

In July 2013, Groucho's sent a letter stating that its "attention [had been drawn to the fact] that [Grouchy's was] operating restaurant[s] in Alpharetta . . .

3

and Norcross," and because "there is a risk of confusion with [its] use of the GROUCHY'S mark," it "regretfully request[ed] that [Grouchy's] select another name for [its] business." After receiving no response, in November 2013, Groucho's attorney sent a second letter warning that he would file a lawsuit unless he "hear[d] back from [Grouchy's]" about the "trademark matter." Grouchy's responded that it did "not believe there is any likelihood of confusion between the stylized mark used by [GROUCHY'S] and [GROUCHO'S] word mark." Between 2013 and 2014, Groucho's restarted its Augusta location and opened restaurants in Statesboro and Athens, all of which closed within a few years.

In June 2014, Groucho's sued Grouchy's for trademark and service mark infringement in violation of Section 32 the Lanham Act, 15 U.S.C. § 1114, false designation of origin in violation of Section 43 of the Act, *id.* § 1125(a), a violation of the Georgia Uniform Deceptive Trade Practices Act, Ga. Code § 10-1-371, violations of the state common law of trademarks and unfair competition, and unjust enrichment. Groucho's alleged that the "operati[on of] a delicatessen under the name GROUCHY'S . . . has caused and will cause confusion in the market place" and its "unauthorized use of [Groucho's] Trademarks [and common law rights in its trademarks] creates a likelihood of confusion, mistake, and deception as to the source and sponsorship of their goods and services such that consumers are likely to believe . . . that [Grouchy's] is associated or affiliated with

4

[Groucho's] and . . . is [its] authorized licensee," which "injure[s] [Groucho's] valuable goodwill and well established business reputation." Groucho's alleged that three incidents evidenced confusion between the two delicatessens: 1) a report that a payroll company mistakenly called Groucho's instead of Grouchy's; 2) two tweets in which one Twitter user seemed to confuse the two delicatessens; and 3) a description of an unnamed customer expressing disappointment at being unable to purchase a Groucho's sandwich at Grouchy's.

Grouchy's filed a motion for summary judgment, which the district court granted. The district court ruled that Groucho's complaint was barred by laches. Groucho's delayed unreasonably, the district court ruled, in failing to pursue a complaint of infringement after initially requesting that Grouchy's change its name, and that delay unduly prejudiced Grouchy's. *See* 15 U.S.C. § 1115(b). The district court rejected Groucho's arguments that its delay was excused based on the doctrine of progressive encroachment and that Grouchy's was not prejudiced because it entered a naked license with S&F Deli.

## II. STANDARDS OF REVIEW

We apply two standards of review. The entry of summary judgment requires that we review *de novo* certain aspects of the decision, such as whether the district court resolved disputed issues of material fact. *See Tana v. Dantanna's*, 611 F.3d 767, 772 (11th Cir. 2010). We review the application of the defense of laches for

5

abuse of discretion. *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1207 (11th Cir. 2008); *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1516 n.12 (11th Cir. 1984).

## III. DISCUSSION

The question presented in this appeal is whether the equitable doctrine of laches estopped Groucho's from complaining about an infringement of its service mark. Laches "requires proof of three elements: (1) a delay in asserting a right or claim; (2) that the delay was not excusable; and (3) that the delay caused the defendant undue prejudice." *Conagra*, 743 F.2d at 1517. That test "is a flexible one: the court must examine both the amount of the delay and the prejudice caused by that delay." *Citibank, N.A., v. Citibank Group, Inc.*, 724 F.2d 1540, 1546 (11th Cir. 1984). Laches is invoked when the delay in commencing a lawsuit exceeds the statute of limitation for an analogous state law claim, which for this trademark action is the four-year limitation period applied to an action under the Georgia Deceptive Trade Practices Act. *See Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1205 (11th Cir. 1997).

The decision that laches barred Groucho's complaint was not an abuse of discretion. Groucho's waited a decade to challenge Grouchy's use of an allegedly infringing service mark. During that time, Grouchy's "buil[t] up a valuable business around its trademark." *See* 6 J. Thomas McCarthy, *McCarthy on*

*Trademarks and Unfair Competition* § 31:12 (4th ed. Supp. 2017) ("Laches is a good defense if plaintiff's long failure to exercise its legal rights has caused defendant to rely to its detriment by building up a valuable business around its trademark."). Without opposition from Groucho's, Grouchy's registered its service mark, opened a second restaurant, sold that restaurant to S&F Deli, and granted S&F a license to use Grouchy's recipes and proprietary property. To promote its business, Grouchy's invested $50,000 in advertising and more than $3 million in operations. Grouchy's "rel[ied] to its detriment" in Groucho's silence. *See id.*

Groucho's likens itself to the plaintiff in *Citibank* who we concluded "was not guilty of laches," but that plaintiff promptly contested the defendants' infringement. In *Citibank*, the plaintiff warned the defendants of a potential infringement when they adopted Citibanc as the name of their holding company, and after the plaintiff "began widespread use of Citibank," it sued the defendants when they included Citibanc in the name of their banks. 724 F.2d at 1546. That the "defendants knew of plaintiff's objections but nevertheless proceeded to enlarge their use of the term" revealed that the defendants "realiz[ed] that the plaintiff disputed their use and did not intend to acquiesce in it." *Id.* at 1546-47. Laches did not bar the plaintiff's complaint of infringement, we concluded, because the defendants had "not relied on the delay by plaintiffs in expanding their use of the mark" when they did so "in the face of plaintiff's constant complaints." *Id.* at 1547.

7

Groucho's conduct was tortoise-like in comparison to the plaintiff in *Citibank*. When Groucho's sent a letter in 2004, Grouchy's had been using the allegedly infringing mark for three years. Groucho's did not object when, a year later, Grouchy's registered the mark and opened a second restaurant. Groucho's waited another nine years to sue Grouchy's. Groucho's overlooked Grouchy's continued infringement.

Groucho's argues that its delay can be excused under the doctrine of progressive encroachment, but we disagree. "Under this doctrine, where a defendant begins use of a trademark . . ., and then directs its marketing or manufacturing efforts such that is it placed more squarely in competition with the plaintiff, the plaintiff's delay is excused." *Kason*, 120 F.3d at 1205. Rather than "discuss encroachment as an excuse for delay," we use it to determine "when delay begins." *Id.* at 1206. We measure delay "from the time at which the plaintiff knows or should know [it] has a provable claim for infringement." *Kason*, 120 F.3d at 1206; *see also Angel Flight*, 522 F.3d at 1207. Consequently, there is no delay if the plaintiff has a "reasonable explanation for failing to sue immediately." *Kason*, 120 F.3d at 1206.

Groucho's fails to give a reasoned explanation for why it waited until 2014 to sue Grouchy's. Rather than take legal action in 2004 after learning of the alleged infringement of the Groucho's mark by Grouchy's, Groucho's issued a warning

that it would sue when it "expand[ed] to Atlanta." But Groucho's never opened a restaurant in Atlanta. Groucho's also did not take legal action while operating a restaurant in Augusta in 2005 or oppose Grouchy's ongoing use of the mark in Alpharetta or the opening of its second restaurant in Norcross. Between 2013 and 2014, Groucho's restarted its location in Augusta and opened restaurants in Athens and Statesboro, but its owner testified that there were no Grouchy's restaurants in those cities or in their vicinity. Groucho's offers no reason why its lawsuit was actionable in 2014 but not a decade earlier when it learned about the alleged infringement or immediately after it commenced its operations in Georgia.

Groucho's also argues that Grouchy's was not unduly prejudiced because it gave a naked license to S&F Deli in 2010, but the doctrine of naked licensing does not aid Groucho's. The abandonment of a mark by "naked licensing" occurs when the owner of a mark fails to supervise its licensee and allows the licensee to depart from the licensor's quality standards. *See Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 387 (5th Cir. 1977). If, as Groucho's argues, Grouchy's entered a naked license, it abandoned rights to a mark it owned. Were that the case, Groucho's could not proceed with its complaint about the infringement of its mark. As Grouchy's argues, it is inconsistent for Groucho's to "allege that . . . [its mark] has been continuously infringed[ and] at the same time argue that . . . Grouchy's abandoned its [own] mark . . . ."

9

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Grouchy's.