[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13441

Non-Argument Calendar

_____

BLUE MOUNTAIN HOLDINGS LTD.,
a British Columbia, Canada corporation,
LIGHTHOUSE ENTERPRISES, INC.,
a Barbados Company,

Plaintiffs-Counter Defendants-Appellants,

*versus*

BLISS NUTRACETICALS, LLC,
a Georgia Limited Liability Company,
DOES 1 THROUGH 10,
SHABANA PATEL,
a Georgia Citizen,
FARUQ PATEL,
a Georgia Citizen,

2                    Opinion of the Court                    22-13441

PHILLIP JONES,
a Georgia Citizen ,

                                        Defendants-Appellees,


VITAZEN BOTANICALS, LLC,
a Florida Limited Liability Company, et al.,

                    Defendants-Third Party Plaintiffs-Counter Claimants.


_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-01837-TWT

_____

Before NEWSOM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

    We agree with the district court that Lighthouse abandoned its trademark.  That conclusion rested on two sub-conclusions: first, that Lighthouse's transfer of its trademark to Blue Mountain was a license; but second, that this license became a "naked license" when Lighthouse failed to police Blue Mountain's use of the trademark.  Because we find no error in either, we affirm.

First, the transfer was a license—not an outright sale or an assignment. That it was labeled a sale is not dispositive. "Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions." *Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891). What distinguishes a license from an assignment is the control retained by the licensor: While "[a]n assignment is the transfer of the entire interest in a mark" and renders the assignee "the new owner," "a license involves the transfer of something less than the entire interest, and does not affect the licensor's title." 4 Callmann on Unfair Comp., Tr. & Mono. § 20:53 (4th ed.). Here, Lighthouse did not transfer its "entire interest" to Blue Mountain. As the district court explained:

> Blue Mountain could not receive legal title to the mark with the USPTO or any other government registry; Blue Mountain could not register the mark in new jurisdictions in its own name—only Lighthouse's; Blue Mountain could not license or assign the mark except as specified in the Agreement or with Lighthouse's prior written consent; Blue Mountain could manufacture, distribute, and sell its products only through approved entities; Lighthouse continued to have a sufficient "ownership interest" to protect the mark; and Lighthouse could order Blue Mountain to modify or cease its use of the mark if Lighthouse suspected harm to the mark's goodwill or noncompliance with the Agreement.

Doc. 359 at 5–6.    This transfer didn't make Blue Mountain the "new owner" of Lighthouse's trademark.  Blue Mountain had only a license.

Second, this license became a "naked" license, and thereby worked an abandonment.  "The abandonment of a mark by 'naked licensing' occurs when the owner of a mark fails to supervise its licensee and allows the licensee to depart from the licensor's quality standards."  *Groucho's Franchise Sys., LLC v. Grouchy's Deli, Inc.*, 683 F. App'x 826, 830 (11th Cir. 2017) (per curiam) (citing *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 387 (5th Cir. 1977)).  We don't judge the "nakedness" of a license by looking at whether the licensor allows product quality to suffer. *See Kentucky Fried Chicken*, 549 F.2d at 387.  Rather, we look merely at whether the licensor is keeping an eye on product quality— whether, in other words, it "has abandoned quality control" or not. *Id*. ("We must determine whether Kentucky Fried has abandoned quality control; the consuming public must be the judge of whether the quality control efforts have been ineffectual.").  If it has, the license is "naked" and the trademark is abandoned.

The district court didn't err by finding that Lighthouse abandoned quality control here—and that there's no genuine dispute as to that fact.  Quite the opposite, "the record in this case shows that Lighthouse . . . engaged in no meaningful supervision or inspection of products bearing the VIVAZEN mark."  Doc. 345 at 16.  Indeed, the record is replete with "sworn deposition testimonies and admissions of material facts" from top Lighthouse and Blue Mountain

22-13441                Opinion of the Court                5

officials "asserting *unequivocally* that Lighthouse has never supervised Blue Mountain's production, marketing, or sale of VIVAZEN products." Doc. 359 at 7 (emphasis added); *see* Doc 345 at 16 ("During their depositions, Blue Mountain's and Lighthouse's corporate representatives revealed that Lighthouse does not exercise any quality control over Blue Mountain's operations and does not inspect any of Blue Mountain's products.").[1]  That is more than enough to find that Lighthouse abandoned quality control, and thus abandoned its trademark altogether.

The district court's orders are **AFFIRMED.**

---

[1] While Lighthouse tried to "backtrack on their numerous admissions" and "drum up a fact issue by citing new deposition excerpts" on the motion for reconsideration, that effort came too late. Doc. 359 at 8. "[P]arties are not permitted to introduce new evidence on a motion for reconsideration, unless the evidence was previously unavailable (which is not the case here)." *Id.* And "[n]either the district court nor this court has an obligation to parse a summary judgment record to search out facts or evidence not brought to the court's attention." *Atlanta Gas Light Co. v. UGI Utils., Inc.*, 463 F.3d 1201, 1208 n.11 (11th Cir. 2006).